CITY OF PARMA, APPELLEE, v. MANNING, APPELLANT.

(No. 51109 — Decided December 2, 1986.)

*Christopher A. Boyko,* assistant city prosecutor, for appellee.

*Gloria Rowland Homolak,* for appellant.

NAHRA, P.J. Robert Manning appeals his conviction, pursuant to a jury verdict, for trespassing.

The trespassing charge against appellant stemmed from an incident at Cuyahoga Community College ("CCC"), Western Campus, on the evening of June 8, 1985. The college was hosting a "Proud of Parma" gathering at its galleria, at which Parma Mayor John Petruska was honored. Appellant appeared and began distributing literature which was critical of Mayor Petruska.

Dorothy Rieman, a police officer for the college, testified she was advised of appellant's activity by someone involved in the "Proud of Parma" event. According to Officer Rieman, she approached appellant and told him he could not pass out literature without permission. Appellant refused to stop distributing his leaflets, contending he had an absolute right to do so, despite Officer Rieman's repeated advice that he was trespassing.

James Lynch, also a security officer at CCC, testified he was called to assist Officer Rieman. Officer Lynch informed appellant that appellant would have to go outside to pass out literature. Appellant then walked outside. Officer Lynch returned to the security office and conferred with his supervisor, William Kubasta, who apparently indicated to Officer Lynch that appellant was not permitted to pass out leaflets anywhere on the college grounds without having obtained a permit.

Kubasta, CCC's Assistant Safety Director, testified he thereafter approached appellant in a CCC parking lot and, after identifying himself, told appellant he could not distribute literature anywhere on campus without a permit. When appellant refused to stop passing out his leaflets, the Parma police were summoned, and appellant was arrested for trespassing.

John J. McNulty, Dean of Student Development at CCC, also testified for the prosecution. According to McNulty, the college's rules require application to the campus scheduler for a permit before a person may distribute literature. He further testified that such an application may be granted even if made one day before the day the applicant seeks permission, as distribution of literature is not considered an "event" for which college rules require five weeks' notice.

The Scheduling Manager for CCC, Kathleen Moskin, testified that all applications to distribute literature come through the scheduling office, and that she received no calls prior to the "Proud of Parma" gathering concerning such a request. In her six years as a scheduler, Moskin did not know of any occasion that a request to distribute literature had been refused. She corroborated McNulty's testimony that requests could be accommodated with as little as one day's notice.

Appellant took the stand in his own defense. He testified that he

called the college the day before the "Proud of Parma" event to inquire about obtaining a permit to pass out literature, and was told by someone at the "activities office" that four to six weeks' notice was required before a permit could be issued. Appellant further testified that on the evening he was arrested he was told by McNulty that a two-week waiting period from the time of application was required.[1] Appellant admitted that Kubasta told him he could not, pursuant to college regulations, distribute leaflets without a permit.

## I

Appellant's first assignment of error is that:

"The trial court erred in excluding defendant's tape recording by failing to follow prescribed methods concerning admissibility of sound-recording evidence."

Appellant argues the trial court erred in refusing to admit a sound tape recording he made of the events surrounding his arrest.

In seeking to introduce the tape, appellant's counsel indicated to the trial court that the recording would show exactly who was present in the parking lot, as well as that appellant was quiet and conducted himself "properly" before his arrest. Further, counsel claimed, the tape would demonstrate that Officer Rieman did not ask appellant about a permit.

Evid. R. 403(B) gives a trial court discretion to exclude evidence, even though relevant, when the probative value of such evidence "is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Moreover, the court may exclude evidence of marginal probative value on collateral matters. *State* v. *Shields* (1984), 15 Ohio

App. 3d 112, 114, 15 OBR 202, 204, 472 N.E. 2d 1110, 1113. Finally, when a trial court determines evidence should not be admitted, its ruling will not be reversed absent a clear and prejudicial abuse of discretion. *O'Brien* v. *Angley* (1980), 63 Ohio St. 2d 159, 17 O.O. 3d 98, 407 N.E. 2d 490.

Applying the above rules, we hold the trial court did not err in excluding the tape recording. Exactly who was present in the parking lot, and appellant's demeanor before he was arrested, were clearly collateral matters on which the tape would have shed little light. Likewise, the precise point at which appellant was informed he needed a permit to distribute literature was at best of minor relevance, as appellant admitted he repeatedly refused to stop his activity even after the point at which *he* claims he was told a permit was required.

The assignment fails.

## II

Appellant's second assignment of error is that:

"The trial court erred in ruling that the Tri-C rules and regulations were constitutional on their face and in their application to appellant's exercise of free speech and expression."

In arguing that CCC's regulations, on their face and as applied, deprived him of his rights under the First Amendment, appellant first asserts that the college requires a five-week waiting period before a permit to distribute literature will be granted, and that the waiting period unreasonably burdened appellant's right of free expression. Appellant relies for this argument on College Procedure #60 030 010 3354: 1-26-55(A)(1), which provides in part:

"(A) For the purpose of facilities use, non-college groups will pertain to, but not be limited to, non-profit groups, business and industry, community organizations, professional

---

[1] McNulty indicated in his testimony that he did not recall such a statement.

associations, and other public agencies representing the people of the district in providing for educational, social, civic, and recreational activities.

"(1) Requests for use of college facilities by non-college groups shall be made in writing using the 'Application/Agreement for Use of College Facilities.' *Applications for use of facilities shall be submitted to the college no later than five weeks prior to the event.* In general, applications submitted by residents of Cuyahoga County shall have precedence over [applications of] residents of other counties." (Emphasis added.)

Although a five-week waiting period to obtain a permit to distribute literature could, under many circumstances, constitute an unconstitutional infringement on First Amendment rights, the record strongly supports the conclusion that no such waiting period exists at CCC. As already indicated, two witnesses from the college testified that an application to distribute leaflets could be processed in as short a period as *one day.* Moreover, the affidavit of Bruce Plumber, Director of Student Activities at CCC, which was attached to the state's motion *in limine,* stated in part:

"Affiant further states that for the entire time he has handled approval of applications it has always been his position as well as that of the other college staff not only that *the five week time period for submission is the maximum limit applying only to events but also that the distribution of literature on the campus by anyone is not an 'event'* as employed in the college manuals *and, therefore, the distribution of literature is not subject to the time requirement.*

"* * *

"Affiant further states that he has never denied, nor do college records show, any denial of an application to distribute literature on the college campus because of literature content or failure to meet time submission requirements and has routinely approved hundreds of applications by various religion and political groups upon proper application, *even on the day of distribution,* provided this [sic] was enough time to review the application to determine whether the request was within the college guidelines, and to allow him to designate acceptable locations for distribution.

"Affiant further states that the College is a repository of individual freedom, especially first amendment rights, and he has always sought to allow expression of these rights by all groups and individuals by expeditiously granting applications ensuring, however, that the least restrictive regulations of time, place and manner are imposed to balance the college's responsibility to its college members and others lawfully permitted to use college facilities." (Emphasis added.)

Based on the foregoing, we see no basis on which to construe the college regulation cited by appellant to apply to an application for the distribution of literature: Our conclusion is bolstered by the fact that the section of CCC's "Policies and Procedures for Scheduling Special Events" governing "Distribution of Literature at the College Campuses" does not specify a waiting period to obtain a permit. Instead, it simply states: "Applicants will be considered on a first-come, first-serve basis."

Appellant also argues under this assignment that even if a five-week waiting period is not formally required to obtain a permit to distribute literature, CCC's *application* of its rules to appellant deprived him of First Amendment rights. Appellant relies for this argument on his testimony that he was told over the telephone by someone at the college, whose name he did not remember, that a four- to six-

week waiting period was required. He further relies on his testimony that McNulty told him on the night he was arrested that two weeks' notice was needed to obtain a permit.

Appellant's testimony was not uncontradicted. As already noted, the college's Scheduling Manager, whose responsibility it is to process permit applications, testified she did *not* receive an inquiry from appellant regarding a permit to distribute literature. Moreover, McNulty indicated in his testimony that he had no recollection of the statement appellant alleged McNulty made concerning a waiting period. Finally, there is no evidence in the record showing appellant *even applied* for a permit to distribute literature.

As the trier of fact with regard to the constitutionality of the college's actions, the trial court was free to weigh appellant's testimony against that of the others, and to believe as much of the testimony of each as it saw fit. *Cleveland Hts.* v. *Friedman* (App. 1955), 71 Ohio Law Abs. 536, 127 N.E. 2d 423. Given the factual dispute concerning appellant's alleged telephone inquiry and McNulty's alleged statement, as well as appellant's admitted failure to even apply for a permit, we see no basis to disturb the trial court's conclusion that the college's permit requirement was constitutionally applied to appellant.

The assignment fails.

### III

Appellant's third assignment of error is that:

"The trial court, due to its noisy air conditioning and ventilation system, denied the defendant a fair trial by failing to provide adequate facilities for preserving the trial record."

Appellant argues he was deprived of a fair trial because portions of the trial testimony were inadequately recorded and thus are not part of the record on appeal.

The trial transcript does exhibit gaps in the testimony which are indicated by the term "(inaudible)," apparently the result of a loud ventilation system. However, appellant fails to allege he was prejudiced in any specific way by the gaps, and no such prejudice is apparent to this court. Absent a showing that failure to preserve portions of trial testimony prejudiced his appeal, appellant is not entitled to reversal. *United States* v. *Selva* (C.A. 5, 1977), 559 F. 2d 1303.

The assignment fails.

### IV

Appellant's fourth assignment of error is that:

"The trial court denied the defendant a fair trial by ignoring improper, prejudicial prosecutorial acts."

Appellant asserts he is entitled to a new trial because of an alleged misstatement by the prosecutor during closing argument. The statement, which had reference to appellant's past criminal convictions, was as follows:

"How believeable [*sic*] is the defendant. Oh, he sounded pretty smooth up there didn't he, I'll bet he sounded even better when he was convicted back in 1980. I'll bet he was smooth then too. Not just any crime, ladies and gentlemen, these crimes are all of dishonesty, turning back odometers, without reporting it, dishonesty. People like you and me are subject to something like that, and he wants you to believe it."

No objection to the prosecutor's statement was registered by appellant's counsel at trial.

The record does not indicate clearly the particular past crimes, all misdemeanors, of which appellant was convicted. It should be noted, however, that testimony concerning the crimes was first elicited by appellant's counsel

on direct examination of appellant. It is fair to assume that since the crimes were misdemeanors, defense counsel would not have raised them unless they involved dishonesty, as otherwise the prosecution would not have been permitted to raise the convictions on cross-examination. Evid. R. 609(A)(2).

Given appellant's failure to object to the disputed statement and to lay the factual basis for such an objection below, this court has no way to ascertain whether the prosecutor's statement was false, and thus improper. Moreover, even assuming the statement was false, we do not think it would have prejudiced appellant, since the evidence was unrebutted that he was distributing literature without a permit despite repeated requests by college representatives that he stop doing so.

### V

Appellant's fifth assignment of error is that:

"The trial court erred in entering a conviction where the conviction was clearly against the manifest weight of the evidence."

Again relying on his own testimony and on constitutional arguments, appellant asserts his conviction for trespassing was against the manifest weight of the evidence. We disagree.

Criminal trespass is prohibited by R.C. 2911.21, which provides in part:

"(A) No person, without privilege to do so, shall do any of the following:
"* * *
"(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows he is in violation of any such restriction or is reckless in that regard;
"* * *
"(D) Whoever violates this section is guilty of criminal trespass, a misdemeanor of the fourth degree."

Appellant admitted in his testimony that he was distributing literature at the campus without a permit, and that even after he was told this was not allowed he repeatedly refused to stop his activity. The prosecution's witnesses corroborated these essential facts. Given the state of this evidence, it may not be said appellant's conviction was against the weight of the evidence.

The assignment fails.

*Judgment affirmed.*

PRYATEL and ANN MCMANAMON, JJ., concur.