**The STATE of Ohio, Appellee,**

v.

**MOON, Appellant.**

[Cite as *State v. Moon* (1991), 74 Ohio App.3d 162.]

Court of Appeals of Ohio,
Lorain County.

No. 90CA004882.

Decided May 15, 1991.

---

*Gregory A. White,* for appellee.
*Joseph C. Grunda,* for appellant.

REECE, Judge.

Defendant-appellant, Eito Reinaldo Moon, appeals his conviction in the Lorain County Court of Common Pleas for drug abuse, R.C. 2925.11. Four assignments of error are raised which have been rearranged for purposes of discussion.

### Assignment of Error II

"The trial court erred to the prejudice of appellant and in violation of rights conferred by Article I, Section 10 of the Ohio Constitution and Fourth and Fourteenth Amendments to the United States Constitution, when it denied appellant's motion to suppress."

■ In the course of an investigation in Lorain, Detectives Resendez and Cambarare secured the services of an informant. After wiring him with a radio transmitter, the detectives instructed the informant to locate drug dealers in a particular area known to the police for drug sales and use. He thereupon contacted several individuals and was told that "Eito" possessed crack cocaine for sale. The informant then approached Moon who divulged that he could supply the drugs he sought. Claiming that he would be back after he obtained some money, the informant returned to the detectives to confirm what they had heard over the transmitter. ·

The detectives then met with Officer Rewak who had observed Moon earlier that evening. He was able to verify that the suspect's clothing matched a description given to the detectives by the informant. All three men were aware of Moon's prior arrest and conviction for crimes involving crack cocaine.

Officer Rewak then proceeded, with the detectives, to the location where Moon had last been seen. The officer described this neighborhood as "a known area for violent crimes and open drug dealing." Officer Rewak immediately recognized Moon. He physically apprehended him, placed him against the police vehicle, and conducted a search which revealed a bag containing crack cocaine hidden in the lining of Moon's hat. Moon was promptly arrested.

Moon filed a pre-trial motion to suppress this evidence which he believed was obtained as a result of a search in violation of the Fourth Amendment to the United States Constitution, and Section 10, Article I, Ohio Constitution. A two-day hearing was conducted on this matter at which both Detective Resendez and Officer Rewak testified. The court concluded that the search was valid and proceeded with trial. The issue is now before us on appeal.

■ The trial court implicitly found, and we agree, that when Officer Rewak grabbed Moon by the arm and placed him up against the police cruiser, Moon had been "seized" for Fourth Amendment purposes. *United States v. Mendenhall* (1980), 446 U.S. 544, 552–555, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497, 508. Once Moon moved to suppress the evidence, the prosecution bore the burden of proving the constitutional propriety of the warrantless search. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.

■ The state was able to persuade the trial court that Officer Rewak was entitled to search Moon as part of a legitimate stop and frisk. This exception to the warrant requirement is employed when the investigating officers do not have sufficient "probable cause" to arrest a suspect but still harbor "reasonable suspicions" of criminal activity. *Terry v. Ohio* (1968), 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909. This "narrowly drawn authority" has been allowed so that an officer may protect himself by searching the individual for weapons before continuing the investigation. *Id.*; see, also, *Adams v. Williams* (1972), 407 U.S. 143, 145–146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–617; *State v. Williams* (1990), 51 Ohio St.3d 58, 60–63, 554 N.E.2d 108, 110–113.

The trial court's resort to the intermediate "stop and frisk" standard is problematic. Officer Rewak did not suggest, and it does not appear likely, that he removed Moon's cap and searched its lining because he feared that a readily accessible weapon was hidden therein. To the contrary, Detective Resendez indicated at the hearing that the search was for "contraband." As far as we are aware, an investigative "stop and frisk" of a person exclusively for drugs has never been constitutionally permissible absent "probable cause" to suspect criminal activity. See *State v. McDonald* (1990), 2 AOA 68, 70.

■ We therefore turn to the more stringent "probable cause" standard. To effectuate a valid arrest, the facts available to the officers at that moment

must warrant a man of reasonable caution in the belief that an offense has been committed. *Beck v. Ohio* (1964), 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142, 148, 31 O.O.2d 80, 83–84. We are convinced that probable cause existed in this case when (1) a known drug abuser, (2) confided in an informant, (3) while police were listening, (4) that he possessed crack cocaine for sale, and (5) in an area known for open drug transactions. See *State v. Wac* (1981), 68 Ohio St.2d 84, 87–88, 22 O.O.3d 299, 301, 428 N.E.2d 428.

The officers, therefore, were entitled to place Moon under arrest, at that time, in complete compliance with constitutional requirements. *United States v. Watson* (1976), 423 U.S. 411, 423–424, 96 S.Ct. 820, 827–828, 46 L.Ed.2d 598, 608–609; *United States v. Santana* (1976), 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300, 305. Consequently, any contemporaneous search of his person for contraband was fully justified as incident to the lawful arrest. *United States v. Robinson* (1973), 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427, 440–441, 66 O.O.2d 202, 210.

Much is made of Officer Rewak's decision to seize Moon first, conduct the search, and *then* formally arrest him. Nevertheless, the mere fact that the patrolman failed to utter the word "arrest" *prior* to the search is not dispositive. *Rawlings v. Kentucky* (1980), 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633, 645–646; *State v. Farndon* (1984), 22 Ohio App.3d 31, 34, 22 OBR 107, 110, 488 N.E.2d 894, 897; *State v. Fahy* (1988), 49 Ohio App.3d 160, 161, 551 N.E.2d 1311, 1313.

In *State v. Smith* (1989), 45 Ohio St.3d 255, 263–264, 544 N.E.2d 239, 246–247, the Supreme Court of Ohio recognized that a valid search need only be contemporaneous with a lawful arrest to be "incident" thereto. The United States Supreme Court reversed on other grounds, disapproving of the Ohio court's apparent justification of the ensuing arrest by evidence obtained from the prior search. *Smith v. Ohio* (1990), 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464. The court quoted *Sibron v. New York* (1968), 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917, 935–936; "It is axiomatic that an incident search may not precede an arrest and serve as part of its justification." *Smith v. Ohio, supra,* 494 U.S. at 543, 110 S.Ct. at 1290, 108 L.Ed.2d at 467. That pitfall is avoided in the case at bar given that the probable cause is not based, in any way, upon the discovery of drugs in Moon's hat.

Finally, we are aware that Detective Resendez remarked at the hearing that the search, in his view, was not incident to the arrest, but rather "investigative." Regardless, the subjective conclusions of the arresting officers are not controlling as our determination must be rendered objectively from the totality of facts and circumstances presented. *United States v. Clark* (C.A.5, 1977), 559 F.2d 420, 425.

This assignment of error is overruled.

### Assignment of Error I

"The trial court erred to the prejudice of appellant, and in violation of rights conferred by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution, when it denied appellant's motion for disclosure of the identity of the informant."

The accused's need to obtain the identity of a confidential informant must be balanced with the public's legitimate interest in protecting the free flow of information to government authorities. *Roviaro v. United States* (1957), 353 U.S. 53, 62, 77 S.Ct. 623, 628–629, 1 L.Ed.2d 639, 646. The Ohio Supreme Court has squarely held that:

"The identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." *State v. Williams* (1983), 4 Ohio St.3d 74, 4 OBR 196, 446 N.E.2d 779, syllabus; see, also, *State v. Menter* (1990), 4 AOA 151, 152.

In the case before us, the informant did not testify at either the suppression hearing or trial. Consequently, his presence was not "vital" to the prosecution's case.

Moon insists, nevertheless, that cross-examination of the informant during the hearing would have been "helpful or beneficial" in determining whether there was probable cause to arrest. We disagree. Initially, the informant's conversation was overheard by the detectives, in its entirety, allowing the defense to inquire as to what actually took place. The confrontation, moreover, occurred in front of a number of witnesses, further reducing the need for the informant's testimony. *Williams, supra,* 4 Ohio St.3d at 76, 4 OBR at 197–198, 446 N.E.2d at 781. While it is theoretically possible that the informant might have refuted the accounts of Detective Resendez and Officer Rewak so persuasively as to require the court to grant the motion for suppression, we will not compromise the strong public interest in favor of confidentiality upon such speculation.

This assignment of error is not well taken.

### Assignment of Error III

"The trial court erred to the prejudice of appellant and in violation of rights conferred by Article I, Section 10 of the Ohio Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution and Evid.R. 802, when over the objection of appellant, the trial court permitted Detective Resendez to testify to out-of-court statements of a non-testifying informant."

Detective Resendez testified at trial, over objection, that prior to the arrest the informant verified that Moon had crack cocaine for sale. The specifics of the conversation were not described in any detail.

These statements by the detective were not, contrary to Moon's contentions, hearsay since they were not offered "to prove the truth of the matter asserted." Evid.R. 801(C). The testimony regarding the informant was advanced simply to describe the course of the investigation leading to the arrest. *State v. Thomas* (1980), 61 Ohio St.2d 223, 232, 15 O.O.3d 234, 240, 400 N.E.2d 401, 407–408. The situation explained was "relevant, equivocal and contemporaneous with the statements," and was therefore admissible. *State v. Blevins* (1987), 36 Ohio App.3d 147, 149, 521 N.E.2d 1105, 1108.

Moon further argues that this evidence should have been excluded pursuant to Evid.R. 403(A) due to its prejudicial impact. We note that his counsel did not address this specific provision in his objection to the trial court. Regardless, we cannot agree that this testimony necessarily and unfairly impaired Moon's defense. A trial judge could properly determine—were a challenge squarely raised—that such background material was needed to complete the state's case against Moon while creating little possibility that he would be convicted of a crime he did not commit. See *Parma v. Manning* (1986), 33 Ohio App.3d 67, 69, 514 N.E.2d 749, 751.

This assignment of error is overruled.

### Assignment of Error IV

"The trial court erred in violation of rights conferred by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution, when it granted appellee's motion to exclude a defense witness."

■ Moon was arrested on May 9, 1990, and formally indicted on June 5, 1990. A motion for discovery was submitted by the state on July 6, 1990. On the morning of the second day of trial, August 7, 1990, Moon's counsel announced—for the first time—that he was going to call James Moore to the stand. This witness was supposedly "with Moon the entire time." No attempt was made to explain why an individual with such obvious ties to the events in question could not be "discovered" until nearly three months from date of the alleged offense had passed.

■ Undoubtedly, a criminal defendant enjoys the right—as embodied in the Sixth Amendment to the United States Constitution—to offer testimony of witnesses on his behalf. *Washington v. Texas* (1967), 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1922–1923, 18 L.Ed.2d 1019, 1022–1023; *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 4–5, 511 N.E.2d 1138, 1140–1142. A trial judge may, nevertheless, exclude such evidence when the orderly administration of justice is threatened by the accused's failure to promptly disclose witnesses. *Taylor v. Illinois* (1988), 484 U.S. 400, 410–418, 108 S.Ct. 646, 653–658, 98 L.Ed.2d

798, 811–817; *Maryland v. Craig* (1990), 497 U.S. 836, ——, 110 S.Ct. 3157, 3165–3166, 111 L.Ed.2d 666, 681.

The eleventh-hour appearance of James Moore in these proceedings was extremely suspicious. There was absolutely no justification for his absence from the witness list previously submitted by the defense. Counsel did not suggest, by means of a proffer or otherwise, that James Moore could add anything to the proceedings that the other defense witnesses were unable to supply. Accordingly, Moon's constitutional rights were not infringed by the trial court's refusal to accept the surprise witness. See *State v. Harcourt* (1988), 46 Ohio App.3d 52, 54–55, 546 N.E.2d 214, 217–219.

This assignment of error is without merit.

The trial court is affirmed consistent with this opinion.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.