DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Plaintiff-appellants, Ronald H. Isroff (individually and as custodian for minors Michael and Stacy Isroff) and Donna Isroff, seek review of a jury verdict in favor of defendant-appellees, Westhall Company, Irwin Isroff, and Clifford Isroff, in this action for breach of fiduciary duty and fraud in the redemption of shares in a closely held corporation.
The Westhall Company operated jewelry stores including Jewel Mart and Roger's Jewelers. Plaintiff Ronald Isroff is an attorney with a Cleveland law firm. He, his wife Donna, and children, Michael and Stacy, received approximately *Page 2 
twelve percent of the corporation's stock from his father, Harold Isroff, some as gifts and some at the time of his death in 1978.
In 1982, Ronald Isroff's uncle, Julius Isroff, redeemed his shares of the corporation. As a result, the plaintiffs' ownership interest rose to slightly more than fifteen percent. The remainder was held by Ronald's cousins, defendants Irwin and Clifford Isroff.
Irwin and Clifford Isroff were active in the operation of the Westhall Company as the president and vice-president, respectively. In 1982, the corporation attempted to buy-out the plaintiffs' shares. The parties negotiated at great lengths until the plaintiffs agreed to redeem their interests in December 1983 for a price of approximately $684,000.00. In 1987, the corporation was sold by the defendants to Sterling Incorporated for about $50,000,000.00.
The instant proceedings were initiated in the Cuyahoga County Court of Common Pleas on February 12, 1988 but were transferred to Summit County. On June 14, 1989, summary judgment was granted in favor of the defendants. This court reversed that decision.Isroff v. Westhall Co. (Feb. 21, 1990), Summit App. No. 14184, unreported, 1 A0A 344, (hereinafter IsroffI). The Supreme Court of Ohio declined to review the dispute.
Upon return to the court of common pleas, a jury trial was conducted which resulted in a general verdict in favor of the defendants. A second appeal has been perfected to *Page 3 
this court. For purposes of discussion, the order of the plaintiffs' two assignments of error have been reversed.
 Assignment of Error II "The trial court erred in permitting certain expert testimony."
The crux of this lawsuit, by the time of trial, was that the defendants withheld material information from the plaintiffs, thereby leading them to redeem their shares at an unfair price. Ronald Isroff testified that in November 1983 he was contacted by the corporation's accountant, Martin Spector, during the ongoing negotiations. Spector told Isroff that since February 28, 1983 — the date on which the corporation's last fiscal year ended — the company had been losing money. The plaintiffs maintained in the court of common pleas that the common-law fiduciary duty among the shareholders was breached when they were not informed that: 1) the company traditionally lost money during the first nine months of the year but made up for it in the last quarter, 2) the principals were anticipating an even greater profit in 1984 as the result of a six store expansion, and 3) a separate employee-shareholder redemption plan was under consideration which, if restructured to include the plaintiffs, would have provided an even greater return than was received.
Because of the unique nature of a close corporation, a "heightened fiduciary duty" has been imposed upon the majority or controlling shareholders requiring "utmost good *Page 4 
faith and loyalty" in dealings with the minority. Crosby v.Beam (1989), 47 Ohio St. 3d 105, 107-109; see, also,Howing Co. v. Nationwide Corp. (C.A. 6, 1991),927 F.2d 263, 267-270. In Isroff I, supra, at 6, this court declared that:
 "It is generally recognized that stockholders in a closely held corporation owe one another substantially the same fiduciary duty in the operation of the enterprise as that owed by one partner to another. Estate of Schroer v. Stamco Supply, Inc. (1984), 19 Ohio App. 3d 34. A party involved in a business transaction with another with whom he is in a fiduciary relationship is bound to make full disclosure of material facts known to him but not to the other. Blon v. Bank One, Akron, N.A. (1988), 35 Ohio St. 3d 98, 101."
No controlling authority exists on the question of what constitutes "material facts" for purposes of Ohio's common-law fiduciary duty to disclose. InTSC Industries, Inc. v. Northway,Inc. (1976), 426 U.S. 438, the Supreme Court fashioned a "general standard of materiality" in respect to proxy solicitations under federal securities law.
 "***An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. This standard is fully consistent with [Mills v. Electric Auto-Lite Co. (1970), 396 U.S. 375] general description of materiality as a requirement that `the defect have a significant propensity to affect the voting process.' It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been *Page 5 
viewed by the reasonable investor as having significantly altered the `total mix' of information made available." [Emphasis original, footnote omitted.]
Id. at 449. This definition has been applied elsewhere in the field. See, e.g., Basic Inc. v.Levinson (1988), 485 U.S. 224, 231-232 (concerning misstatements in connection with purchase or sale of securities.) In light of the obvious parallels presented, TSC Industries' well developed standard of materiality will be applied to the instant dispute.
To support his claim that "material facts" were withheld from him, Ronald Isroff testified that the plaintiffs would not have accepted the offer to redeem their shares had all the information cited been disclosed. In response, the defendants presented Joseph E. Palmer, a certified public accountant and consultant specializing in business acquisitions. This expert opined that the addition of six jewelry stores would not have affected his valuation of the enterprise and the plaintiff, Ronald Isroff, was aware of this general fact. The plaintiffs complain on appeal that 1) Palmer was not competent to render an opinion as to what a "reasonable shareholder" in a close corporation would consider important, 2) expert testimony was unnecessary as the jurors were capable of forming their own opinions, 3) Palmer should not have been allowed to speculate as to what the plaintiffs knew, 4) the expert opinion rendered was not based upon personal knowledge, and 5) Palmer was permitted *Page 6 
to testify as to the fair market value of the shares even though the court had previously determined this fact to be irrelevant.
Given its superior vantage, the trial court enjoys broad discretion in the admission and exclusion of evidence and should not be reversed absent a clear abuse which had materially prejudiced the appellant. State v. Hymore (1967),9 Ohio St. 2d 122, 128, certiorari denied (1968),390 U.S. 1024; Humphrey v. State (1984),14 Ohio App. 3d 15, 18. Such deference is appropriate not only in regard to questions concerning expert testimony, Ohio Turnpike Comm. v.Ellis (1955), 164 Ohio St. 377, paragraph eight of the syllabus; King v. LaKamp (1988),50 Ohio App. 3d 84, 85, but also issues addressing relevancy,Rigby v. Lake Cty. (1991), 58 Ohio St. 3d 269, 271, and undue prejudice, Parma v. Manning (1986),33 Ohio App. 3d 67, 69.
The trial judge could properly determine, within his discretion, that each of the plaintiffs' objections lacked merit. The jurors were presented with the complicated issue of whether a reasonable shareholder would have found the facts allegedly withheld from the plaintiffs to be important. Ronald Isroff's subjective assertion that he would have cancelled the sale had the information cited been disclosed was not, as the plaintiffs seem to believe, dispositive. The analysis required is strictly an objective one. *Page 7 
As a professional business evaluator, Palmer was competent to assist the jury with the question of what information would affect the value of corporate stock. Evid. P. 702. The defendants were not limited in their selection of expert witnesses to other "reasonable shareholders" of close corporations. There was nothing improper about allowing Palmer to explain that the additional stores would not, in his view, alter the stock's worth. Such testimony was a valid means of refuting Ronald Isroff's prior statements to the contrary. Evidence is not "unduly prejudicial", and therefore excludable, simply because one party finds it unfavorable. Evid. R. 403.
Moreover, Palmer did not theorize as to what Ronald Isroff "knew" in regard to the impact of a six store expansion. Palmer simply testified that Ronald Isroff had more than likely used this same valuation methodology. This conclusion was based upon the expert's personal examination of an estate return signed by the plaintiff and his personal knowledge that the plaintiff 1) was an experienced attorney, 2) had received a business administration degree, 3) had been in the family enterprise for years, and 4) enjoyed access to its financial statements and records. The plaintiffs protest that Palmer was not capable of rendering such an opinion since he had never spoken with Ronald Isroff or considered the possibility that someone else may have prepared the estate return. Nevertheless, substantive attacks such as these must be directed exclusively to the *Page 8 
trier of facts as they affect the weight to be afforded the testimony and not its admissibility. Davis v.Zucker (1951), 62 O.L.A. 81, 85; McQueen v.Goldey (1984), 20 Ohio App. 3d 41, 48-49.
The plaintiffs' final argument is that Palmer should not have been permitted to comment upon the fair market value of the stock at the time of redemption. This remark was elicited while Palmer was describing how he was able to accurately appraise the corporation's worth without any knowledge of the plans for a six store expansion. The plaintiffs claim that earlier in the trial, the court had "held that testimony as to fair market value was irrelevant in this case." Actually, no such ruling was rendered. In attempting to simplify the issues, the judge reasoned during a side-bar that the defendants did not need to confront Ronald Isroff on cross-examination with pre-redemption financial statements since the plaintiffs were conceding that they received fair value for their stock based upon the information known to them at that time. In no sense were further witnesses forbidden to mention the corporation's 1983 fair market value. The plaintiffs make no attempt to explain how their rights were infringed in this regard.
The record is devoid of any indication that the common pleas judge abused his discretion[1] by allowing the expert *Page 9 
testimony. This assignment of error is overruled.
 Assignment of Error I
"The trial court erred in its charge to the jury." The common-law fiduciary duty to disclose is not boundless. In Isroff I,supra, at 7, this court recognized that:
 "***[I]t is generally held that the duty to disclose is limited to present, material information that would reasonably affect the complainant's decision to enter the transaction, and does not extend to `soft' information such as speculations and forecasts of potential future value. Arber v. Essex Wire Corp.
(C.A. 6 1974), 490 F. 2d 414; Starkman v. Marathon Oil Co. (C.A. 6, 1985), 772 F.2d 231.***."
See, also, Garcia v. Cordova (C.A. 10, 1991),930 F.2d 826, 829-831. If controlling or majority shareholders were *Page 10 
required to affirmatively reveal every prediction, potential venture, or prospective appraisal entertained by the corporation no matter how tenuous, minority shareholders contemplating a transaction would find themselves buried "in an avalanche of trivial information — a result that is hardly conducive to informed decisionmaking." TSC Industries, supra, at 448-449. Principals who failed to undertake a policy of wholesale disclosure, moreover, would find it impossible to do business with minority shareholders without incurring a stream of lawsuits.
Consistent with the standard adopted by this court, the trial judge instructed the jury that:
 "***
 "The duty to disclose is limited to present, material information that would reasonably affect the Plaintiff's decision to enter the transaction, and does not extend to soft information, such as speculations and forecasts of potential future value."
 "***."
The plaintiffs contend that 1) this charge was legally incorrect thereby causing the jury to disregard key evidence and 2) a further instruction should have been provided to the effect that the general rule does not apply when information must be disclosed to ensure that statements already made do not become misleading.
Addressing the first argument, the validity of the "soft information" limitation was established by this court *Page 11 
earlier in these proceedings. Isroff I, supra, at 7. This ruling is now the "law of the case" and will not be reconsidered. Nolan v. Nolan (1984),11 Ohio St. 3d 1, 3; Blackwell v.Internatl. Union, U.A.W. (1984), 21 Ohio App. 3d 110, 112.
Sufficient evidence was presented at trial to raise a genuine dispute over whether at least some of the information supposedly withheld from the plaintiffs was too "soft" to require disclosure. See Garcia, supra, at 830. Focusing specifically upon the proposed opening of six new stores, the plaintiffs point to exhibits suggesting that in early 1983 defendants Irwin and Clifford Isroff had, while attempting to secure a loan, revealed to a bank their desire to expand and, at the same time, were anticipating sizable profits for fiscal year 1984. There is nothing in the record which conclusively demonstrates as a matter of law, however, that these upbeat predictions were founded upon factual, objectively verifiable data which was unavailable to the plaintiffs. Rather, the evidence presented could reasonably support a view that Irwin and Clifford Isroff were optimistic businessmen who foresaw substantial growth due to a number of subjective factors which might, or might not, include the tentative plans for expansion. Since reasonable minds could therefore disagree as to whether "hard" or "soft" information was at issue, the trial court's instruction was appropriate. See, generally, Cleveland Elec. Illum. Co. v.Astorhurst Land Co. (1985), 18 Ohio St. 3d 268, 272. *Page 12 
The question was properly one for the jury to resolve.
The plaintiffs' second argument is that if this charge was warranted, the judge should have embellished it. In their brief to this court our attention is directed to "Request for Instruction No. 1 (Revised)" which sets forth the additional charge, we are told, that "full disclosure is also required where it is necessary to dispel misleading impressions that might have been created by partial revelation of the facts." Nowhere in the record does a duly filed copy of this document exist. Since there is no evidence that the requested instruction was set forth in writing, the issue is waived pursuant to Civ. R. 51(A). Holloman v. RutmanWine Co. (1983), 11 Ohio App. 3d 257, 258; Powell v.Turner (1984), 16 Ohio App. 3d 404, 406.
Regardless, the record confirms that the additional charge supposedly sought by the plaintiffs was delivered in full to the jury. The court announced that:
 "***
 "If you find from the preponderance of the evidence that, in negotiating the purchase of Plaintiffs [sic] shares, Defendants Irwin Isroff, Clifford Isroff, or their authorized representative, Martin Spector, were acting in a fiduciary relationship requiring a full disclosure of material facts, and that they failed to make disclosures to Ronald Isroff of all material facts known to them, but which were not known to Ronald Isroff, or that they failed to disclose information that was necessary to dispel any misleading impressions that they knew, or ought to have known, might have been created by their partial revelation of the "facts, then you must *Page 13 
find that the Defendants breached the fiduciary duty that they owed to the Plaintiffs." [Emphasis added.]
 "***."
These dual aspects of the fiduciary duty to disclose were also highlighted elsewhere by the judge.
The plaintiffs claim that the trial court erred further by failing to pointedly advise the jury that the "soft information" limitation does not apply where disclosure is necessary to dispel misleading impressions. Not even the missing "Request for Instruction No. 1 (Revised)", as described by the plaintiffs, proposed a charge in writing along these lines. Since no formal objection of this specific nature otherwise appears in the record, Civ. R. 51(A) again precludes the issue from being raised for the first time on appeal.Schade v. Carnegie Body Co. (1982),70 Ohio St. 2d 207, paragraph one of the syllabus.
This assignment of error is also without merit.
Conclusion
The judgment of the common pleas court is affirmed in all respects.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this *Page 14 
journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run, App. R. 22(E).
Costs taxed to appellants.
Exceptions.
BAIRD, P. J., COOK, J., CONCUR.
[1] Surprisingly, plaintiffs argue in their reply brief that "an abuse of discretion occurs whenever the admission of testimony `materially prejudices a party.'" As their sole authority for watering down the oft-employed abuse of discretion criterion, plaintiffs cite Krischbaum v. Dillon (1991),58 Ohio St. 3d 58, 66, in which the Court remarked: "Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." (citations omitted). In our view, the Court did not intend to restrict this standard of review by equating it with anything that is somehow materially prejudicial; thereby reversing years of longstanding precedent. Rather,Krischbaum is entirely consistent with the familiar rule that an abuse of discretion connotes more than an error of law or judgment as it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Steiner v.Custer (1940), 137 Ohio St. 448, paragraph two of the syllabus; Cedar Bay Constr. Inc. v. Fremont (1990),50 Ohio St. 3d 19, 22. Such a violation is found in the rare instance when a decision is grossly violative of fact and logic so as to demonstrate perversity of will, defiance of judgment, undue passion, or extreme bias. Huffman v. Hair Surgeon,Inc. (1985), 19 Ohio St. 3d 83, 87. *Page 1