[Cite as *State v. Bowen*, 2020-Ohio-24.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

     Plaintiff-Appellee

-vs-

ROBERT C. BOWEN

     Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P.J
Hon. John W. Wise, J.
Hon. Patricia A. Delaney, J.

Case No. 19CA0007

O P I N IO N

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Holmes County Court of Common Pleas, Case No. 18CR0058 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 6, 2020 |

APPEARANCES:

For Plaintiff-Appellee

ROBERT K. HENDRIX
Assistant Prosecuting Attorney
Holmes County, Ohio
164 E. Jackson Street
Millersburg, Ohio  44654

For Defendant-Appellant

ERIC J. ALLEN
The Law Office of Eric J. Allen, Ltd.
4200 Regent, Suite 200
Columbus, Ohio  43219

*Hoffman, P.J.*

{¶1} Defendant-appellant Robert C. Bowen appeals his convictions and sentence entered by the Holmes County Court of Common Pleas, on one count of rape and four counts of sexual battery, following a jury trial. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2} On June 4, 2018, the Holmes County Grand Jury indicted Appellant on one count of rape, in violation of R.C. 2907.02(A)(2) and (B), a felony of the first degree; and four counts of sexual battery, in violation of R.C. 2907.03(A)(5) and (B), felonies of the third degree. The charges arose from incidents involving Appellant's adopted daughter ("the Child"). Appellant appeared before the trial court for arraignment on June 12, 2018, and entered pleas of not guilty to all of the charges.

{¶3} The matter proceeded to jury trial on January 28, 2019. The following evidence was adduced at trial.

{¶4} Mary Bowen testified she and Appellant were married on July 4, 2011. Although they were still legally married at the time of the trial, Bowen indicated they had been separated for over a year. Bowen and Appellant became foster parents to the Child in September, 2012, and the child's sister in November, 2012. Bowen and Appellant adopted both children on March 24, 2014. Bowen conceded the Child and her sister had behavioral problems.

{¶5} Bowen explained the Child and her sister were homeschooled after the Child's sister called in a bomb threat to her elementary school. Bowen worked six days a week, usually from 7:30 a.m. to 5:30 or 6:00 p.m., but worked close enough to their home to check on the children during her lunch hour.

{¶6} In June, 2016, when the Child was 15 years old, she disclosed to Bowen Appellant had touched her inappropriately. Bowen explained the Child had snuck out of the house around midnight one evening to meet a 19 or 20 year old young man, and did not return until 3:30 a.m. Bowen confronted the Child, telling her the young man would get in trouble if she (Bowen) called the police. The Child responded Bowen should call the police about Appellant as he had touched her. Bowen questioned Appellant, who denied any wrongdoing. The Child later told Bowen she was lying. The Child returned to public school in September, 2017.

{¶7} In January, 2018, after the Child's sister set a number of fires, Children's Services became involved with the family. The Child's sister told Children's Services Appellant had been abusing her and the Child. When Children's Services questioned the Child regarding her sister's disclosure, the Child denied any abuse by Appellant.

{¶8} Bowen recalled the Child attended her prom the weekend of April 21, 2018. When the Child was at school the following Monday, the Child disclosed Appellant had been abusing her. Bowen was instructed to bring the Child to Children's Services and thereafter learned about the Child's disclosure. Bowen was contacted by Victim's Assistance and was informed Appellant had confessed.

{¶9} The Child testified, when she was 15 years old, Appellant entered her bedroom and touched her breasts over her clothing. Appellant instructed her not to tell her mother. The Child recalled it was the summer and she was sick. The Child detailed another incident which occurred when she was still 15. She noted she was being homeschooled at the time and needed help with algebra. The Child proceeded to Appellant's bedroom which was located in the basement of the home. Appellant began

to help her with her math, but then pushed her onto his bed and removed her clothes. Appellant vaginally penetrated her. Appellant told the Child not to tell anyone or he would not be her father anymore. Appellant also threatened to do the same to the Child's sister if the Child told anyone. After the incident, the Child hurriedly put on her clothes and returned upstairs to finish her schoolwork. The Child testified Appellant had sexual intercourse with her at least five times. Shortly before the Child turned 16, she disclosed the abuse to Bowen. The Child admitted she later told Bowen she had made "the whole thing up". Tr. at 128.

{¶10} The Child testified, in January, 2018, she spoke with a detective and a social worker after the Child's sister had set a few fires in their home. The detective and the social worker questioned the Child about Appellant, but she did not disclose the abuse at that time. The Child disclosed the abuse to her boyfriend and a friend the night of her prom, April 21, 2018. The following Monday, the Child met with Ms. Gilson, the school liaison, and told the woman what Appellant had done to her. Ms. Gilson informed the Child she was required to contact the authorities. When the Child returned home from school, Bowen met her at the bus and told her Children's Services needed to speak with her. The Child met with Jacqueline Shaw and disclosed the abuse.

{¶11} Sergeant James Henry, a detective with the Holmes County Sheriff's Office, testified he interviewed Appellant on May 10, 2018. The interview was recorded and the recording was played for the jury. During the interview, Appellant confessed to having a sexual relationship with the Child. Det. Henry acknowledged the Child, during an interview on January 9, 2018, initially denied any sexual contact with Appellant. The

detective explained it is not unusual for the victim of sexual abuse to initially not disclose the abuse occurred, but subsequently, after counseling, is able to do so.

**{¶12}** Appellant testified on his own behalf.  He explained he was contacted by Det. Lay of the Millersburg Police Department, who requested Appellant come to the station to speak with him.  Appellant phoned Det. Lay and the two spoke on the telephone for an hour.  During the conversation, the detective set up a computerized voice stress analyzer ("CVSA").  Several weeks later, in February, 2018, Appellant was interviewed by Det. Lay.  Appellant and the detective spoke for two hours, including the time conducting the CVSA.  Appellant did not hear from the detective again.

**{¶13}** On April 24, 2018, the Tuesday following the Child's prom, Appellant received a message he needed to call Job and Family Services.  He was instructed to contact Det. Henry.  When Appellant initially sat down with Det. Henry, he assumed he was being questioned about the situation with the Child's sister.  Appellant was shocked by the allegations.  Appellant denied confessing to Det. Henry and denied abusing the Child.

**{¶14}** After hearing all the evidence and deliberating, the jury found Appellant guilty of all five counts contained in the Indictment.  The trial court sentenced Appellant to an aggregated term of incarceration of ten years.

**{¶15}** It is from these convictions and sentence Appellant appeals, raising the following assignments of error:

I. THE STATE OF OHIO FAILED TO PRODUCE SUFFICENT [SIC] EVIDENCE TO CONVICT THE APPELLANT OF THE COUNTS IN THE

INDICTMENT IN VIOLATION OF HIS RIGHT TO DUE PROCESS UNDER THE FIFTH AMENDMENT MADE APPLICABLE TO ALL STATE CRIMINAL PROSECUTIONS BY THE FOURTHEENTH [SIC] AMENDMENT TO THE FEDERAL CONSTITUTION.

II. THE CONVICTIONS IN THIS MATTER ARE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE VIOLATIVE OF THE APPELLANT'S RIGHT TO DUE PROCESS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION.

III. THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING A PUNITIVE DISCOVER SANCTION THAT WAS NOT THE LEAST RESTRICTIVE AND WAS VIOLATIVE OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT MADE APPLICABLE TO ALL STATE CRIMINAL PROSECUTIONS BY THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION.

IV. THE TRIAL COURT COMMITTED ERROR BY ALLOWING DISCUSSION OF A CVSA TEST AND VIOLATED APPELLANT'S RIGHT TO DUE PROCESS GUARANTEED TO HIM UNDER THE FIFTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO STATE CRIMINAL PROSECUTIONS BY THE FOURTEENTH AMENDMENT.

I

{¶16} In his first assignment of error, Appellant contends his convictions were not based upon sufficient evidence and the trial court erred in denying his Crim. R 29 motion for acquittal.

{¶17} Criminal Rule 29(A) provides a court must order the entry of a judgment of acquittal on a charged offense if the evidence is insufficient to sustain a conviction on the offense. Crim. R. 29(A). However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman,* 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. Thus, a motion for acquittal tests the sufficiency of the evidence. *State v. Tatum,* 3d Dist. Seneca No. 13-10-18, 2011-Ohio-3005, 2011 WL 2448972, ¶ 43, citing *State v. Miley,* 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist. 1996).

{¶18} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe,* 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 47. Sufficiency is a test of adequacy. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Accordingly, the question of whether the offered evidence is sufficient to sustain a verdict is a question of law. *State v. Perkins,* 3d Dist. Hancock No. 5-13-01, 2014-Ohio-752, 2014 WL 855870, ¶ 30, citing *Thompkins* at 386, 678 N.E.2d 541.

{¶19} Appellant was convicted of one count of rape, in violation of R.C. 2907.02(A)(2) and (B), which provides:

(A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

(B) Whoever violates this section is guilty of rape, a felony of the first degree. * * *

{¶20} Appellant also was convicted of four counts of sexual battery, in violation of R.C. 2907.03(A)(5), which provides:

(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: * * *

(5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

{¶21} With respect to the rape charge, Appellant submits the evidence was insufficient as Appellant adamantly denied the incident giving rise to the rape charge and there was no corroborating evidence. With respect to the sexual battery counts, Appellant explains the Child testified there was only one incident involving force, which was the basis for the rape charge.

{¶22} The Ohio Supreme Court in *State v. Eskridge,* 38 Ohio St.3d 56, 526 N.E.2d 304(1988), a case involving the rape of a four year old by her father, addressed the element of force in a rape count. The Ohio Supreme Court explained:

Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established. *State v. Martin* (1946), 77 Ohio App. 553, 68 N.E.2d 807 [33 O.O. 364]; *State v. Wolfenberger* (1958), 106 Ohio App. 322, 154 N.E.2d 774 [7 O.O.2d 73]. In the within case, we are confronted with a child being told to do something by an important figure of authority, and commanded not to tell anyone about it. In such a case, we find nothing unreasonable about a finding that the child's will was overcome. Consequently, the forcible element of rape was properly established. *State v. Fowler* (1985), 27 Ohio App.3d 149, 154, 27 OBR 182, 187, 500 N.E.2d 390, 395. *Id.* at 58-59.

{¶23} The evidence at trial established Appellant was the Child's adoptive father. The Child testified about an incident which occurred when she was 15 years old. She was homeschooled at the time and needed help with algebra. The Child sought Appellant's assistance. She proceeded to Appellant's bedroom. Appellant began to help her with her math, but then pushed her onto his bed and removed her clothes. Appellant vaginally penetrated her. Appellant told the Child not to tell anyone or he would not be her father anymore. Appellant also threatened to do the same to the Child's sister if the

Child told anyone. The Child stated Appellant had sexual intercourse with her at least five times.

**{¶24}** We find coercion is inherent in parental authority when a father sexually abuses his child. Further, we find Appellant's threat of assaulting the Child's sister was a subtle and psychological force. The Child's will was overcome by the fear and duress of harm to her sibling. Accordingly, we find the forcible element of rape was properly established. We also find the element of sexual battery were established. Bowen testified she and Appellant were the Child's adoptive parents. The Child detailed several incidents during which Appellant engaged in sexual conduct with her.

**{¶25}** Based upon the foregoing, we find Appellant's convictions were based upon sufficient evidence.

**{¶26}** Appellant's first assignment of error is overruled.

II

**{¶27}** In his second assignment of error, Appellant challenges his convictions as against the manifest weight of the evidence.

**{¶28}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered'." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶29} "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

{¶30} Appellant asserts the Child was not a credible witness for several reasons. First, Appellant refers to the Child's initial disclosure of the abuse to Bowen in 2016. When Bowen confronted the Child after she was caught sneaking out of the house to meet her boyfriend, the Child declared Appellant had abused her. The Child later recanted her allegation, explaining she had lied to get herself out of trouble. Next, Appellant points to the Child's testimony she never told her sister about the abuse. Appellant submits this statement was not credible as the two sisters were extremely close; therefore, the Child would have told her sister about the abuse. Appellant adds the Child acknowledged she was angry about the break-up of Bowen and Appellant's marriage, explaining her anger translated to revenge at Appellant. Finally, Appellant notes the Child waited until 2018, to disclose the abuse to anyone.

{¶31} Det. James Henry testified it is not unusual for a victim to initially deny abuse has occurred. In fact, when the Child was questioned during her cross-examination about her January, 2018 denial, she commented, "Why would I want to tell four (4) strangers what I was going through?" Tr. at 148. The Child finally acknowledged the abuse after she had "worked up enough courage." Tr. at 149.

{¶32} In addition, the videotape of Appellant's interview with Det. Henry was played for the jury. During the interview, Appellant confessed to the crimes. Appellant

did not, however, concede he threatened the Child not to tell anyone or forced her to have intercourse with him on the first occasion.

**{¶33}** The jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State* v. *McGregor,* 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 294299. The jury clearly believed the testimony of the Child and the state's other witnesses.

**{¶34}** Upon review of the entire record, including reading the entire transcript, we find Appellant's convictions were not against the manifest weight of the evidence.

**{¶35}** Appellant's second assignment of error is overruled.

III

**{¶36}** In his third assignment of error, Appellant argues the trial court erred in precluding the introduction of the Child's text messages as a sanction for an alleged discovery violation. Appellant maintains such sanction was not the least restrictive and violated his right to due process.

**{¶37}** "Although a criminal defendant has the right to present witness testimony on his behalf, a trial court may 'exclude such evidence when the orderly administration of justice is threatened by the accused's failure to promptly disclose witnesses.' " *State v. Calise,* 9th Dist. No. 26027, 2012–Ohio–4797, ¶ 30, quoting *State v. Moon,* 74 Ohio App.3d 162, 169, 598 N.E.2d 726 (9th Dist. 1991). "The rules of discovery, and more specifically Crim. R. 16, imbue trial courts with the discretion to exclude testimony that is not disclosed in a timely manner in order to prevent surprise and ensure a fair trial." *Calise* at ¶ 30, citing *State v. Barrios,* 9th Dist. No. 06CA009065, 2007–Ohio–7025, ¶ 18.

"Exclusion is a permissible sanction 'as long as it would not completely deny the defendant his constitutional right to present a defense'." *Barrios* at ¶ 18, quoting *State v. Sinkfield,* 2d Dist. No. 18663, 2001 WL 1517314, *8 (Nov. 30, 2001). Because a trial court's decision to exclude testimony is a discretionary one, we review a court's decision to exclude evidence under an abuse of discretion standard of review. *Barrios* at ¶ 18. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶38} In *Lakewood v. Papadelis,* 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), the Ohio Supreme Court stated, "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Id.* at paragraph two of the syllabus.   The High Court noted, "[t]he philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial." *Id.* at *3. (Citation omitted.)  The *Papadelis* Court explained, "[t]he purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial." *Id.*

{¶39} In *Papadelis*, the Supreme Court also sets forth a list of factors to be considered by the trial court prior to issuing a sanction.  Those factors included: "the extent to which the prosecution will be surprised or prejudiced by the witness' testimony, the impact of witness preclusion on the evidence at trial and the outcome of the case, whether violation of the discovery rules was willful or in bad faith, and the effectiveness of less severe sanctions." *Id.* at *5.

**{¶40}** At trial, during the cross-examination of the Child, defense counsel sought to introduce text messages, which were either to or from the Child's phone, for the purpose of refreshing her recollection. The state objected to the introduction of the text message, indicating it had not received such in discovery. Defense counsel explained she just recently obtained the text messages and did not know how the Child would testify. The trial court would not allow defense counsel to use the text messages for any purpose. Defense counsel noted her objection for the record.

**{¶41}** Assuming, arguendo, the trial court erred in excluding the text messages, we find any error to be harmless. Appellant failed to make a proffer of the nature of text messages. Without such a proffer, this Court cannot find Appellant was prejudiced by the exclusion of the evidence.

**{¶42}** Appellant's third assignment of error is overruled.

IV

**{¶43}** In his final assignment of error, Appellant maintains the trial court erred in allowing discussion of a computerized voice stress analyzer test, and violated his right to due process as a result. Specifically, Appellant argues the trial court should have precluded defense counsel from questioning Det. Henry about why he did not offer Appellant the opportunity to take a CVSA test.

**{¶44}** We review this assignment of error under a plain error analysis. In *State v. Thomas*, 152 Ohio St.3d 15, 92 N.E.3d 821, 2017–Ohio–8011, he Ohio Supreme Court clarified the standard of review for plain error:

Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014–Ohio–4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Id. We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id.* at ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 759

N.E.2d 1240, quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*Id.* at ¶¶ 32–34.

**{¶45}** During her cross-examination of Det. Henry, defense counsel asked the detective if he had offered Appellant an opportunity to take a CVSA or lie detector test to "confirm his confession." Tr. at 206. Det. Henry responded he would have offered the test if Appellant had not confessed. The detective would not concede the test would be a tool to further verify or support Appellant's confession. Det. Henry explained he does "believe in them" and will only offer the test as a chance to conduct a second interview.

**{¶46}** We find Appellant opened the door to this line of questioning and Appellant has failed to establish the alleged plain error affected the outcome of the trial. Det. Henry stated he did not believe in CVSA's or polygraphs, and utilized them only as a means to a second interview with an accused. The detective's testimony neither incriminated nor cleared Appellant. Accordingly, we find no error, plain or otherwise.

**{¶47}**  Appellant's fourth assignment of error is overruled.

**{¶48}**  The judgment of the Holmes County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Wise, John, J.  and

Delaney, J. concur