JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Brandon Talley, appeals his convictions for rape, gross sexual imposition, kidnapping, and aggravated robbery. After a thorough review of the record and for the reasons set forth below, we affirm.
 {¶ 2} On April 28, 2006, the Cuyahoga County Grand Jury returned an eight-count indictment against appellant. Counts 1 and 2 charged rape, under R.C. 2907.02(A)(2), with a sexually violent predator specification; Count 3 charged kidnapping, under R.C. 2905.01(A)(3) and/or (A)(4), with a sexually motivated specification and a sexually violent predator specification; Count 4 charged kidnapping, under R.C.2905.01(A)(2) and/or (A)(3), with a sexually motivated specification and a sexually violent predator specification; Count 5 charged aggravated robbery, under R.C. 2911.01(A)(1); Count 6 charged aggravated robbery, under R.C. 2911.01(A)(3); Count 7 charged aggravated burglary, under R.C. 2911.11(A)(1); and Count 8 charged aggravated burglary, under R.C.2911.11(A)(2). All charges carried one-year and three-year firearm specifications under R.C. 2941.141 and 2941.145 respectively. All charges were first degree felonies.
 {¶ 3} On November 6, 2006, appellant waived his right to a jury trial, and a bench trial commenced. The trial court reached a verdict on November 9, 2006, finding appellant guilty of Counts 1 and 2 (rape), with a one-year firearm specification and a sexually violent predator specification; Count 3 (kidnapping), with *Page 3 
both one-and three-year firearm specifications and a sexual motivation specification; and Count 5 (aggravated robbery), with a one-year firearm specification. The court found appellant not guilty on Counts 4, 6, 7, and 8.
 {¶ 4} On January 5, 2007, the day of sentencing, the court sua sponte amended its verdict by vacating the verdict as to Count 2 and finding appellant guilty of gross sexual imposition under R.C. 2907.05(A)(1), a fourth degree felony. In addition, the court found appellant not guilty of both firearm specifications on Count 2. On Count 3 (kidnapping), the court vacated the three-year firearm specification as a clerical error. The court also dismissed all of the sexually violent predator specifications.
 {¶ 5} The court then sentenced appellant to a six-year term of imprisonment. Appellant was sentenced to three years on Count 1, with a one year term for the firearm specification, to be served prior to and consecutive with the base charge; eighteen months on Count 2; three years on Count 3, with a one year term for the firearm specification, to be served prior to and consecutive with the base charge; and three years on Count 5, with both one-year and three-year terms for the firearm specification, to be served prior to and consecutive with the base charge. Counts 1, 3, and 5 carried mandatory time. The court ordered the terms to run concurrently, and the firearm specifications merged. In addition, appellant was classified as a sexually oriented offender. *Page 4 
 {¶ 6} At trial, the state produced the 14-year-old male victim, the victim's mother and grandmother, a neighbor of the victim's, and the investigating officer, Detective Arthur King, as witnesses. The defense produced appellant and his mother as witnesses.
 {¶ 7} The victim, his mother, and his grandmother lived together in Cleveland, Ohio. At trial, the victim's mother testified that her son was not permitted to invite anyone into their home without express permission or when she or his grandmother were not present. She testified that when she arrived home around 5:45 p.m. on January 18, 2006, the front door to the house was open, which caused her to be alarmed. She testified that she entered the doorway to her home and continuously called for her son until he responded. She further testified that her son came upstairs from the basement, and he was naked. She testified that upon further investigation of the house, she found that several bedrooms had been ransacked. She also testified that, except for missing house keys, she was unsure if anything else was missing.
 {¶ 8} The victim's grandmother testified that she left the house on January 18th around 2:30 p.m., after her grandson had returned home from school. She testified that she returned home after she received a frantic call from her daughter telling her that her grandson had been raped and the house had been robbed. She further testified that she came home immediately and found that her bedroom had been ransacked; she was not sure if anything was missing. *Page 5 
 {¶ 9} Both the victim's mother and grandmother testified that the locks to the doors were changed that evening before the victim was taken to the hospital.
 {¶ 10} The victim testified that the first time he ever spoke with appellant was on the Cleveland Raven chat line on January 18, 2006. He testified that, based on his conversation with appellant that day, he invited appellant to his house. He testified that he knew he was not permitted to allow anyone into the house without permission from his mother or grandmother. The victim testified that appellant, who had identified himself as "Jay" over the phone, came to his house between 4:00 and 4:15 p.m., and the two of them talked at the kitchen table for ten or fifteen minutes. The victim testified that appellant then drew some type of gun, made him strip off his clothes, and forced him to perform oral sex on appellant. He further testified that appellant next engaged him in anal sex. The victim testified that both he and appellant ejaculated, and the victim gave appellant towels from the bathroom to clean himself and the victim.
 {¶ 11} The victim further testified that appellant then dressed and forced the victim to take him through the house while appellant ransacked the house. He testified that appellant threatened to shoot him if he did not comply. The victim testified that he saw appellant take two necklaces from his grandmother's room. He testified that, at some point, he ran from appellant and hid in the basement, and he could hear appellant walking around in the house. He further testified that the next time he heard voices, it was his mother calling to him. *Page 6 
 {¶ 12} The victim testified that he was afraid to tell his mother the truth about the circumstances that led to appellant being in the house. He stated that he also lied to the police because he was fearful that he would get in trouble with his mother. The versions of the facts he told his mother and the police reflected that appellant forced his way into the victim's home, not that the victim invited him. The victim testified that he told his mother his house keys were missing. Finally, the victim testified that, after the door locks were changed, his mother and grandmother took him to the hospital, where he completed a rape kit.
 {¶ 13} The victim's neighbor testified that she saw the victim and another boy sitting on the side steps to his house on the afternoon of January 18th. She testified that she recognized the victim, but could not positively identify appellant as the other person.
 {¶ 14} Detective King testified that he knew the victim had changed his story several times about having invited appellant to his home. He testified that the semen samples taken from the towels in the house came from the victim. Detective King testified that he put together a photo array of possible suspects from telephone records he received from the phone company. On March 9, 2006, Detective King showed the photo array to the victim, and the victim identified appellant as the person who had been in his home and raped him on January 18th. Detective King also testified that he attempted to contact appellant, and appellant eventually turned himself in. *Page 7 
 {¶ 15} At the close of the state's case, defense counsel made a Crim.R. 29 motion, which was denied by the court. The defense called appellant's mother to testify. She testified that on the afternoon of January 18th, her son used her van while she was at work. She further testified that he picked her up from her job at Adlai Stevenson School between 4:00 and 4:15 p.m. She testified that he did not leave the house again the rest of the afternoon.
 {¶ 16} Next, appellant chose to testify over his attorney's objection. He testified that on January 18th, he spoke with someone who identified herself as "Michelle" on the Cleveland Raven chat line. He testified that he arranged to meet Michelle at her home. He testified that he went to her home around 3:55 p.m. that afternoon and, when he arrived at the house, someone he could not see opened the side door for him, and he entered. Appellant testified that he saw a person wearing a long wig and women's clothes, and that person repeatedly told him that Michelle would be down shortly. Appellant testified that after about five minutes in the house, he decided to leave because he was uncomfortable, and he also had to pick up his mother from work. He testified that he left through the front door, which required a key to open. Appellant testified that he recognized the victim as being the person in the house who was wearing the wig and women's clothing.
 {¶ 17} At the close of the evidence, defense counsel made a Crim.R. 29 motion, which was denied by the court. The court proceeded to verdict, finding appellant guilty of two counts of rape, one count of kidnapping, and one count of *Page 8 
aggravated robbery. On the day of sentencing, the court vacated one count of rape and instead found appellant guilty of gross sexual imposition. Appellant was sentenced to six years in prison and was classified as a sexually oriented offender.
 {¶ 18} Appellant raises four assignments of error for our review.
 Manifest Weight {¶ 19} "I. Defendant-Appellant's convictions were against the manifest weight of the evidence, thus his convictions were in violation of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United States Constitution."
 {¶ 20} In his first assignment of error, appellant argues that because the victim admittedly changed his version of the facts several times, the trial court erred in reaching a guilty verdict. We do not agree.
 {¶ 21} The court in State v. Martin (1983), 20 Ohio App.3d 172, set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 22} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 23} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in State v. Wilson (June 9, 1994), Cuyahoga App. *Page 9 
Nos. 64442/64443, adopted the guidelines set forth in State v.Mattison (1985), 23 Ohio App.3d 10, syllabus. These factors, which this court noted are in no way exhaustive, include: "1) Knowledge that even a reviewing court is not required to accept the incredible as true; 2) Whether evidence is uncontradicted; 3) Whether a witness was impeached; 4) Attention to what was not proved; 5) The certainty of the evidence; 6) The reliability of the evidence; 7) The extent to which a witness may have a personal interest to advance or defend their testimony; and 8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary." Id.; See State v. Moore, Cuyahoga App. No. 81876, 2003-Ohio-3526.
 {¶ 24} While it is true that the victim changed his story between the time he told his mother, made a statement to the police, and testified at trial, the court was able to assess his credibility when he gave his testimony. It is not incredible for the court to have accepted the version the victim gave under oath. It is believable that the victim was afraid when he was recounting the events of the afternoon to his mother, whom he had clearly disobeyed by allowing a stranger into the house. What is more significant is that the victim's stories did not change significantly about what appellant did to him once appellant entered the house. The variations stemmed only from how it came to pass that appellant gained entry to the house.
 {¶ 25} Furthermore, the trial court had the opportunity to hear appellant's version of the events; it found the victim credible, not appellant. Nor did the court *Page 10 
find the testimony of appellant's mother believable regarding her son's whereabouts on the afternoon of January 18th.
 {¶ 26} We do not find that the trial court erred in finding appellant guilty where, as here, there was evidence to support the guilty verdicts. Appellant's first assignment of error is overruled.
 Sufficiency of the Evidence {¶ 27} "II. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Mr. Talley was guilty of aggravated robbery. O.R.C. 2911.01(A)(1)."
 {¶ 28} In his second assignment of error, appellant argues that there was no evidence that anything was taken from the house or that the victim saw him take anything. He also argues that the victim was not sure whether the gun he saw was a real gun or a toy cap gun.
 {¶ 29} In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential *Page 11 
elements of the crime proven beyond a reasonable doubt. (Jackson v.Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at paragraph two of the syllabus.
 {¶ 30} More recently, in State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to "sufficiency" as opposed to "manifest weight" of the evidence:
 {¶ 31} "With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the [trier of facts] or whether the evidence is legally sufficient to support the * * * verdict as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Robinson (1955), 162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982),457 U.S. 31, 45, 102 [*387] S.Ct. 2211, 2220, 72 L.Ed. 2d 652, 663, citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed. 2d 560." Id. at 386-387.
 {¶ 32} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence that goes to all *Page 12 
the essential elements of the case. Cohen v. Lamko (1984),10 Ohio St.3d 167, 462 N.E.2d 407.
 {¶ 33} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the trier of fact as to the weight and sufficiency of the evidence. State v. Nicely (1988),39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v.DeHass (1967), 10 Ohio St.2d 230.
 {¶ 34} In this case, appellant was convicted of aggravated robbery under R.C. 2911.01(A)(1), which states: "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *."
 {¶ 35} A conviction is proper under this statute if the defendant is found to have attempted to commit theft while having a deadly weapon on him or under his control. There was evidence at trial that the victim saw appellant with a gun, and that appellant used that gun to control the victim while appellant ransacked the house. It was also the victim's testimony that he saw appellant take two necklaces and that the house keys that were in the house before appellant arrived were missing after appellant left. This evidence is sufficient for the court to find appellant *Page 13 
guilty of aggravated robbery. The court did not err in returning a guilty verdict on the aggravated robbery charge. Appellant's second assignment is overruled.
 Photo Array {¶ 36} "III. The photographic lineup used by the Cleveland Police Department should have been excluded from evidence as it was impermissibly suggestive."
 {¶ 37} In his third assignment of error, appellant argues that the photo array of possible suspects presented to the victim was impermissibly suggestive and necessarily led the victim to select appellant's photograph from the available choices. Specifically, appellant argues that the other suspects in the photo array were not in the age range the victim told the police his attacker was, and his attorney should have filed a motion to suppress them.
 {¶ 38} At the outset, we note that appellant failed to object to any of the testimony regarding the above stated evidence at the time the state was examining the victim at trial; however, appellant's counsel raised his objection at the conclusion of all the evidence, so he has not waived his right to appeal. Nonetheless, we do not find that appellant's argument has merit.
 {¶ 39} To determine if the procedure was impermissibly suggestive, the courts look at the totality of the circumstances, including the victim's opportunity to view the defendant during the offense, his degree of attention, the accuracy of descriptions given to the police, his level of certainty, and lapse of time from the event to the time of identification. State v. Caldwell (Sept. 27, 1984), Cuyahoga App. No. 45112. *Page 14 
Then, even if the court finds the procedure suggestive, the identification would still be admissible if the identification itself was adequately reliable. State v. Moody (1978), 55 Ohio St.2d 64, 67,377 N.E.2d 1008.
 {¶ 40} Under this analysis, we do not find that the trial court erred in allowing the photographs to be admitted. The six photographs were all of African American males, between the ages of 24 and 42. Three of the photos, including that of appellant, were of men in their mid-twenties. The victim testified that he spent at least 20 to 30 minutes with appellant in the house while the appellant raped him and ransacked the house. More importantly, there is no dispute that appellant was present in the victim's house on the afternoon of the date of the alleged crimes. Appellant testified to his presence in the victim's house on January 18, 2006; he further testified that he recognized the victim at the trial as being the same person he saw at the house. Finally, both appellant and Detective King testified that appellant turned himself in and admitted to entering the victim's house on the day in question.
 {¶ 41} Because the identification was not impermissibly suggestive, it would have been futile for defense counsel to have filed a motion to suppress the photo array. Accordingly, we overrule appellant's third assignment of error.
 Ineffective Assistance of Counsel {¶ 42} "IV. Trial counsel was ineffective where he failed to offer a meaningful and reliable testing of the adversarial system." *Page 15 
 {¶ 43} In his fourth assignment of error, appellant argues a claim of ineffective assistance of counsel. Specifically, appellant argues that his attorney did not follow certain leads, call certain witnesses, or file motions to suppress evidence submitted by the state. We do not find merit in this argument.
 {¶ 44} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144.
 {¶ 45} In reviewing a claim of ineffective assistance of counsel, itmust be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
 {¶ 46} The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley (1989),42 Ohio St.3d 136, that:
 {¶ 47} "`When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant'sSixth Amendment rights were violated, there must be a determination as *Page 16 
to whether the defense was prejudiced by counsel's ineffectiveness.'State v. Lytle (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498,358 N.E.2d 623, 627, vacated in part on other grounds (1978),438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington (1984),466 U.S. 668. * * *
 {¶ 48} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. `An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365
(1981).' Strickland, supra, at 691. To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice."Bradley, supra.
 {¶ 49} In the case before us, the conduct of appellant's counsel at the pretrial and trial does not amount to ineffective assistance of counsel under the Strickland standard. The decisions made by appellant's counsel were strategy decisions-which witnesses to call, whether to move to suppress evidence, and what line of questioning to pursue on direct and cross-examination of witnesses. Counsel did *Page 17 
object on the record to his client taking the stand; however, appellant rejected his attorney's advice and testified on his own behalf.
 {¶ 50} Even if we were to conclude that counsel's representation was flawed, appellant has not demonstrated that, but for his attorney's errors, he would have been acquitted. In a bench trial, the judge, as the trier of fact, is responsible for weighing the evidence and determining the credibility of the witnesses. In this case, the court even engaged in a post-verdict review of its original determination of guilt and sua sponte vacated certain counts and amended others. Appellant has not shown a successful claim of ineffective assistance of counsel. Accordingly, his fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 18 
 CHRISTINE T. McMONAGLE, P.J., and PATRICIA ANN BLACKMON, J., CONCUR *Page 1