[Cite as *State v. Goller*, 2024-Ohio-5983.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 4-23-20

  v.

GREGORY A. GOLLER,

O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Defiance County Common Pleas Court
Trial Court No. 22 CR 14604

**Judgment Affirmed in part, Reversed in part and Cause Remanded**

**Date of Decision: December 23, 2024**

APPEARANCES:

    *Henry Schaefer* **for Appellant**

    *Russell R. Herman* **for Appellee**

**MILLER, J.**

{¶1} Defendant-Appellant, Gregory A. Goller ("Goller"), appeals from the November 9, 2023 judgment of the Defiance County Court of Common Pleas, after he was found guilty by a jury of all 27 counts in the indictment filed against him. Goller argues that the statute of limitations had run on all counts except for six counts of rape. He also argues the rape convictions were against the manifest weight of the evidence.

{¶2} For the reasons that follow, we affirm in part and reverse in part. Specifically, the rape convictions were not against the manifest weight of the evidence; the statute of limitations did not bar appellant's prosecution for six of the endangering children counts; and the statute of limitations did not bar appellant's prosecution for the single count of illegal use of a minor in nudity-oriented material. However, the statute of limitations barred appellant's prosecution for the other fourteen counts of endangering children; therefore, the convictions for those fourteen counts must be vacated.

I.     **FACTS AND PROCEDURAL HISTORY**

A.     **Indictment, Victims, and Involvement by Law Enforcement**

{¶3} On January 20, 2022, Goller was indicted on 27 felony charges. Counts 1 through 6 each charged Goller with rape, in violation of R.C. 2907.02(A)(1)(b). Counts 7 through 26 each charged Goller with endangering children, in violation of R.C. 2919.22(B)(5). Each of those 20 counts was based on a specific photograph

of L.G. or K.A. (or both). L.G. and K.A. were children at the time of the alleged offenses but in their mid-twenties in August 2023 when the trial took place. Count 27 charged Goller with illegal use of a minor or impaired person in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(1). Except for Count 27, the alleged victim in all counts was either L.G. or K.A.

{¶4} L.G. was born on October 4, 1996. Goller is not her biological father, but he had a relationship with L.G.'s mother during part of L.G.'s childhood and he adopted L.G. when she was two or three years old. Although L.G. mostly lived with her mother, she lived with Goller in his house for part of her childhood, including around the time she was in the sixth grade.

{¶5} K.A. was born on October 29, 1998. During part of K.A.'s childhood, her mother ("Colleen") and Goller lived together as husband and wife, but they were not actually married. Goller lived with Colleen and K.A. for nine years, during which L.G. lived with them for a short time. During their relationship, Goller and Colleen had a son, Tyler Goller ("Tyler"). Tyler is K.A.'s half-brother in that they have the same mother, but different fathers.

{¶6} At the trial, Tyler testified that in 2021 Goller gave him two laptops and instructed him "to erase them, like factory reset." (Trial Tr. at 125). Tyler was unable to do it, so he took the laptops to Colleen and K.A, his mother and half-sister. Colleen and K.A. were able to log into the laptops and found nude pictures on them. One picture they found is the subject of Count 27: a picture that included naked

female minors who were *not* K.A. or L.G. At that point, Tyler "just walked away" because he "didn't want to see any of it." (*Id.* at 126). K.A. and Colleen decided to turn the laptops over to law enforcement.

{¶7} Deputy Steven Mueller of the Defiance County Sheriff's Office ("Deputy Mueller") testified that he received a call from Colleen on or about December 20, 2021. Colleen had concerns that the two laptops Tyler had received from Goller contained child pornography.

{¶8} Deputy Mueller specializes in digital evidence and computer crimes, and he has been assigned to the FBI's Child Exploitation and Human Trafficking Task Force out of Toledo since 2013. Deputy Mueller located the picture that is the subject of Count 27 on one of the laptops Colleen provided. On January 6, 2022, he executed a search warrant at Goller's residence based on what he had found on the laptops. Among the items seized during the search of Goller's residence were a USB drive and a bag containing sex toys, including vibrators. The nude pictures of L.G. and K.A. that became the subject of Counts 7 through 26 were discovered on the USB drive and on two CDs, all of which was seized from Goller's master bedroom. As an example of how the seized digital evidence connected to Goller, one of the media devices also contained Goller's truck registration.

{¶9} According to Deputy Mueller, Child Protective Services ("CPS") had conducted an investigation regarding Goller and the two girls around 2009 or 2010. A report from that time indicated that K.A. did not disclose any "bad touches" from

Goller. Upon finding the nude pictures of L.G. and K.A. in January 2022, Deputy Mueller conducted his own interview of L.G., who denied Goller had touched her inappropriately. These statements from L.G. and K.A. were significantly different from what they testified to at the trial.

### B. Testimony at Trial Concerning the Rape Charges

{¶10} During the trial, L.G. testified that, when she was around 11 years old, Goller put syrup on her naked body while she and K.A. laid on the kitchen floor of his house. According to L.G., Goller put the syrup on her private areas and then licked it off. Similarly, K.A. testified that Goller brought a tarp into the kitchen area, had her and L.G. lay down on it next to each other, Goller poured strawberry and chocolate syrup on them, and Goller licked the syrup off both her vaginal area and L.G.'s vaginal area.

{¶11} L.G. also testified that Goller would take her and K.A. to the playhouse in his backyard. Even though L.G. and K.A. were children, he would show them pornographic videos and use sex toys such as vibrators on them in the playhouse. L.G. testified that she witnessed Goller put an adult toy inside of K.A.'s vagina. She recalled that Goller had at least tried to do the same thing to her, but she could not recall whether Goller had been successful. K.A. testified that Goller would take her and L.G. to the playhouse, they would watch pornography, and—among other sexual acts—he inserted a vibrator into her vagina and into L.G.'s vagina.

According to K.A., Goller "would tell us that this is what girls do and girls enjoy it." (Trial Tr. at 162-163).

{¶12} Additionally, L.G. testified that Goller put her on his kitchen counter to teach her how to shave her vagina and, during that time, Goller touched her vagina with his fingers. L.G. was eleven years old at the time. K.A. similarly testified that Goller would put her and L.G. on the kitchen counter and shave their vaginas.

{¶13} K.A. also testified that, while staying in a local hotel in Defiance, Goller put spray cheese on her vagina and licked it off. A photo that was the subject of one of the endangering children counts showed spray cheese on K.A.'s vagina, breasts, and belly button. L.G. testified that she went to a hotel in Defiance with K.A. and Goller when she was around 11 years old. K.A. testified that, at the hotel, Goller taught the two girls how to play a game where they would have to take off an article of clothing every time they missed a target. According to K.A., once they missed so much that they were naked, the two girls had to run around and have a "marker fight." (*Id*. at 163-164). Goller took photos of them naked and covered in marker. Similarly, L.G. explained that she had a "marker fight" with K.A., where they "went around and drew on each other with markers" while naked. (*Id.* at 143).

## C.    Testimony at Trial Concerning the Endangering Children Charges

{¶14} Each of the twenty counts for endangering children involved a different photo, with ten counts alleging L.G. was the victim and the other ten counts alleging K.A. was the victim. During the trial, those twenty photos were identified by L.G. or K.A., shown to the jury, and admitted into evidence. Some of those photos were of both L.G. and K.A. As an example, one of the photos depicted both girls sitting naked on a bed at the hotel in Defiance. L.G. testified that Goller had taken the photo. As another example, one of the photos was a close-up of a female child's genitalia with what appeared to be marker on her vagina. L.G. testified the photo was of her body and was taken by Goller.

{¶15} The following chart provides specifics for the endangering children counts.

| Count Number(s) | Alleged Victim | Date Offense Committed | Age of Victim | Location |
|---|---|---|---|---|
| 7 through 16 | L.G. | September 6, 2008 | 11 | Hotel |
| 17 through 20 | K.A. | September 6, 2008 | 9 | Hotel |
| 21 and 22 | | February 5, 2011 | | |
| 23 | K.A. | February 7, 2011 | 12 | Goller's House |
| 24 through 26 | | February 19, 2011 | | |

Of the twenty photos, several were identified by L.G. or K.A. as being taken at the hotel in Defiance. The dates of those photos (September 6, 2008) matched up with

L.G.'s testimony that she went to the hotel with K.A. and Goller when she was around 11 years old. Additionally, L.G. testified she was in the sixth grade when she was around 11 years old.

{¶16} Regarding the ten counts where K.A. is the alleged victim, K.A. testified that the first four photos (i.e., Counts 17 through 20) were taken at the hotel in Defiance. As shown above, K.A. is two years younger than L.G. This aligned with K.A.'s testimony indicating she would have been in the fourth grade when L.G. was in the sixth grade. This also matched up with the dates of the hotel photos (September 6, 2008). Thus, K.A. was nine years old and in fourth grade at the time the hotel photos were taken. Regarding the last six photos where K.A. is the alleged victim (i.e., Counts 21 through 26), the evidence showed they were taken at Goller's house on various days in February 2011.[1]

{¶17} When asked if she had told anybody about the pictures shown to her at trial (i.e., the photos for Counts 17 through 26), K.A. testified that she told teachers at school when she was in the sixth grade. She also testified that she told her grandmother before that time. Neither her grandmother nor any teacher testified at trial.[2] However, K.A. clarified that, to her knowledge, no one actually recovered any of the photos until law enforcement found them through the search warrant in

---

[1] K.A. specifically identified four of the six photos as being taken at Goller's house. Regarding the other two photos, Deputy Mueller's testimony demonstrated they likely also were taken at Goller's house because they were taken within 15 minutes of ones that K.A. specifically identified as being taken at Goller's house. (*See* Trial Tr. at 166-168, 194-195).

[2] The only witnesses that testified were Tyler, L.G., K.A., and Deputy Mueller.

January 2022, and K.A. did not actually see the photos until after that time.  K.A. just knew the photos had been taken.  She also clarified that she never told anybody about the "actual sexual activity" between her and Goller until the recent investigation after Goller gave Tyler the laptops.  (Trial Tr. at 169).  Similarly, L.G. testified that, to her knowledge, no one ever found or saw the nude photos of her until the recent investigation by Deputy Mueller.  L.G. denied ever telling anybody about the photos or rapes.

{¶18} L.G. and K.A. both testified that it was not easy for them to talk about the rapes and photos during the trial.  Upon being asked how she had been affected by the conduct at issue, L.G. said that she has been told by doctors or counselors that she has complex post-traumatic stress disorder (PTSD) and it "is very hard for [her] to get through [her] daily life sometimes."  (*Id.* at 149).

### D.    Goller's Crim.R. 29 Motion and Sentence

{¶19} During the trial, Goller's attorney moved, pursuant to Crim.R. 29, for an acquittal.  Regarding Counts 7 through 27, he argued the statute of limitations had run because more than six years had elapsed since K.A.'s disclosure to the teachers, according to K.A.'s own testimony.  The trial court denied the motion, finding that the statute of limitations as to those counts did "not begin to run until the actual discovery of the existence of the digital images, which would have been in December of '21 at which time these [images] came into possession" of law enforcement.  (*Id.* at 212).  The trial court explained that, under the "totality of

circumstances," it did not believe K.A.'s disclosure of the pictures' existence to her teachers "triggered the running of the statute of limitations as it relates to those counts." (*Id.* at 213).

{¶20} The jury found Goller guilty on all 27 counts. The trial court sentenced Goller to: life imprisonment for each of the rape offenses in Counts 1 through 6, with the terms of imprisonment for those counts to be served consecutively to each other; seven years of imprisonment for each of Counts 7 through 11, with the terms of imprisonment for those counts to be served consecutively to each other and consecutively to the terms of imprisonment for Counts 1 through 6; seven years of imprisonment for each of Counts 12 through 16, with the terms of imprisonment for those counts to be served concurrently to each other and to all other counts; seven years of imprisonment for each of Counts 17 through 21, with the terms of imprisonment for those counts to be served consecutively to each other and consecutively to the terms of imprisonment for Counts 1 through 11; seven years of imprisonment for each of Counts 22 through 26, with the terms of imprisonment for those counts to be served concurrently to each other and to all other counts; and, seven years of imprisonment for Count 27, with the term of imprisonment for that count to be served concurrently to all other counts. This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶21} Goller raises two assignments of error for our review:

**First Assignment of Error**

**The court erred when it found the statute of limitations to not have ran on some counts in the indictment.**

**Second Assignment of Error**

**The rape convictions were against the manifest weight of the evidence.**

### III. DISCUSSION

#### A. First Assignment of Error

**{¶22}** In the first assignment of error, Goller argues that the statute of limitations had run on Counts 7 through 27 before the prosecution for those offenses commenced. Goller does not challenge the rape convictions on statute-of-limitations grounds.

##### 1. Standard of Review

**{¶23}** Application of a statute of limitations presents a mixed question of law and fact. *State v. Baldwin*, 2021-Ohio-4566, ¶ 19 (3d Dist.). While we give due deference to a trial court's findings of fact if supported by competent, credible evidence, we review legal issues de novo. *Id.*

##### 2. Applicable Law

###### a. *Offenses at issue*

**{¶24}** Both now and at the relevant times, the endangering children statute provided:

> (B) No person shall do any of the following to a child under eighteen years of age . . . (5) Entice, coerce, permit, encourage, compel, hire, employ, use, or allow the child to act, model, or in any other way

> participate in, or be photographed for, the production, presentation, dissemination, or advertisement of any material or performance that the offender knows or reasonably should know is obscene, is sexually oriented matter, or is nudity-oriented matter[.]

R.C. 2919.22(B)(5). As used in that section, "'[n]udity-oriented matter' means any material or performance that shows a minor in a state of nudity and that, taken as a whole by the average person applying contemporary community standards, appeals to prurient interest." R.C. 2919.22(D)(4)(b). The term "material" includes any picture or image capable of arousing interest through sight and includes an image appearing on a computer monitor or an image recorded on a data storage device. R.C. 2919.22(D)(4)(a); R.C. 2907.01(J).

{¶25} Unlike Counts 7 through 26, Count 27 alleged illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(1). Under that statute, no person shall "create, direct, produce, or transfer any material or performance that shows [any minor who is not the person's child or ward] . . . in a state of nudity," unless the exception in the statute applies.[3] R.C. 2907.323(A)(1).

### b.    *Statute of limitations and tolling provisions*

{¶26} The applicable statute of limitations is set forth in R.C. 2901.13. That statute "is a general statute of limitations which prescribes the time within which criminal prosecutions must be brought by the state," and it also provides specialized

---

[3] The exception does not apply in this case.

rules and tolling exceptions. *State v. Hensley*, 59 Ohio St.3d 136, 137 (1991). It

states, in relevant part:

> (A)(1) Except as provided in division (A)(2), (3), or (4) of this section[4] or as otherwise provided in this section, a prosecution shall be barred unless it is commenced within the following periods after an offense is committed: (a) For a felony, six years[.]
>
> . . .
>
> (E) An offense is committed when every element of the offense occurs. In the case of an offense of which an element is a continuing course of conduct, the period of limitation does not begin to run until such course of conduct or the accused's accountability for it terminates, whichever occurs first.
>
> (F) A prosecution is commenced on the date an indictment is returned or an information filed, or on the date a lawful arrest without a warrant is made, or on the date a warrant, summons, citation, or other process is issued, whichever occurs first. . . .
>
> (G) The period of limitation shall not run during any time when the corpus delicti remains undiscovered.
>
> . . .
>
> (J) The period of limitation for a violation of any provision of Title XXIX of the Revised Code that involves a physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of a child under eighteen years of age . . . shall not begin to run until either of the following occurs:
>
> > (1) The victim of the offense reaches the age of majority.
> >
> > (2) A public children services agency, or a municipal or county peace officer that is not the parent or guardian of the child, in the county in which the child resides or in which the abuse or neglect

---

[4] Exceptions within division (A) relate to prosecutions for rape in violation of R.C. 2907.02 (among other offenses), but not to the offenses at issue in this assignment of error.

is occurring or has occurred has been notified that abuse or neglect is known, suspected, or believed to have occurred.

2901.13(A)(1)(a), (E), (F), (G), (J) (effective Oct. 12, 2016 to April 3, 2023).[5] For purposes of this case, the "age of majority" referenced in R.C. 2901.13(J)(1) is 18 years old. *See* R.C. 3109.01; *State ex rel. A.N. v. Cuyahoga Cty. Prosecutor's Office*, 2021-Ohio-2071, ¶ 10. We note that (G), (J), and the second sentence of (E)—when applicable—are provisions that each prevent the limitation period from starting to run until a particular occurrence.

**{¶27}** "The primary purpose of a criminal statute of limitations is to limit exposure to prosecution to a certain fixed period of time following the occurrence of those acts the General Assembly has decided to punish by criminal sanctions." *State v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.*, 85 Ohio St.3d 582, 586, 1999-Ohio-408 (1999). Statutes of limitations for criminal offenses "are to 'be strictly construed against the state, and liberally construed in favor of the accused.'" *Baldwin*, 2021-Ohio-4566, at ¶ 18 (3d Dist.), quoting *State v. Swartz*, 88 Ohio St.3d 131, 133, 2000-Ohio-277 (2000). The State bears the burden of proving that the prosecution was commenced within the applicable period of limitation. *Id.* at ¶ 19. Moreover, "[t]he State bears the burden of establishing whether the statute of limitations was tolled." *Id.* at ¶ 22.

---

[5] The parties did not address which version of R.C. 2901.13 applies to this case. Regardless, for purposes of the issues presented in this appeal, there is no meaningful difference between the version in effect at the time the prosecution commenced and the versions at the time the offenses were committed.

### 3. Analysis

{¶28} The prosecution in this matter commenced in January 2022. The limitation period for Counts 7 through 27 is six years. R.C. 2901.13(A)(1)(a). Thus, any crime in the indictment committed before January 2016 "would be barred by the six-year statute of limitations in R.C. 2901.13, *unless* the statute of limitations was somehow tolled or otherwise extended." (Emphasis in original.) *Hensley*, 59 Ohio St.3d at 138.

{¶29} The State contends the tolling provisions in R.C. 2901.13(E) and (G) prevented the limitation period from elapsing and the statute of limitations only began to run with the discovery of the photographs by law enforcement. On the other hand, Goller contends the tolling provisions in R.C. 2901.13(G) and (J) were no longer an impediment to the commencement of the six-year limitation period once K.A. told her teacher about the abuse in 2011.

{¶30} We will address each of the statutory provisions raised by the parties, first in the context of the endangering children counts (7 through 26) before separately addressing Count 27. In doing so, we will determine whether each one tolled the limitations period and, if so, whether it continued tolling beyond January 2016 to save the claims from being barred. Ultimately, the trial court's decision during trial that the limitation period did not begin to run until the "actual discovery" of the existence of the digital images when they came into law enforcement's possession is at odds with applicable law.

### *a.       R.C. 2901.13(E) – Course of Conduct*

**{¶31}** R.C. 2901.13(E) provides that "[a]n offense is committed when every element of the offense occurs."  According to the indictment, all of the endangering children counts were alleged to have been committed on or about either September 6, 2008 or three dates in February 2011.   The offense dates were based on the date each of the twenty photos was taken, as established by Deputy Mueller's testimony. In accordance with the child endangering statute and the evidence presented at trial, we conclude that every element of each endangering children offense charged in Counts 7 through 26 occurred when the corresponding picture for each count was taken.  R.C. 2919.22(B)(5).

**{¶32}** However, on appeal, the State contends the endangering of children was a continuing course of conduct until the photos were discovered by Deputy Mueller in 2022.  In support of this theory, the State relies on the portion of R.C. 2901.13(E) that reads, "In the case of an offense of which an element is a continuing course of conduct, the period of limitation does not begin to run until such course of conduct or the accused's accountability for it terminates, whichever occurs first." As factual support for its contention, the State asserts this "continuing course of conduct" portion of R.C. 2901.13(E) applied because Goller "recklessly engaged in a continuing course of conduct by possessing, publishing, distributing, and/or disseminating those child porn images when he gave the 2 computers to his son." (Appellee's Brief at 10).

Case No. 4-23-20

**{¶33}** The State's contention is based on two faulty premises. First, the State's argument that Goller engaged in a continuing course of conduct by "possessing, publishing, distributing, and/or disseminating the images" adds elements that are not part of R.C. 2919.22(B)(5). Specifically, the terms "possessing," "publishing," and "distributing" are not found in the endangering children statute. While perhaps another criminal statute prohibited Goller from possessing the photos of L.G. and K.A.,[6] *possessing* material that is obscene, sexually oriented matter, or nudity-oriented matter is not an element of the endangering children statute for which the State indicted Goller.

**{¶34}** Second, the State suggests Goller's giving the laptops to his son constituted "dissemination" of the photographs, thus creating a continuing course of conduct. However, the evidence at trial refutes this claim. This is because the images corresponding with Counts 7 through 26 were not located on the laptops. Deputy Mueller testified they were located on a USB drive and two CDs that law enforcement found in the master bedroom of Goller's house. (Trial Tr. at 187-190, 192-198). Thus, contrary to the State's assertion, "[t]he sharing of the computers by the Defendant with his son" *did not* "constitute[] an additional publishing, distribution, and/or dissemination of the photographs." (Appellee's Brief at 10). Particularly given that we must strictly construe the statute against the State, the

---

[6] For example, R.C. 2907.321(A)(5) prohibits someone with knowledge of the character of the material involved from buying, procuring, *possessing*, or controlling any obscene material that has a minor as one of its participants.

-17-

State did not establish that the "continuing course of conduct" portion of R.C. 2901.13(E) applied to toll the running of the period of limitation for Counts 7 through 26 beyond the specific dates in the chart above.

### b.    R.C. 2901.13(G) – Corpus Delicti

{¶35} Next, the period of limitation does not run "during any time when the corpus delicti remains undiscovered." R.C. 2901.13(G). "Corpus delicti" is defined as "the body or substance of the crime," and it has "two elements: (1) the act itself, and (2) the criminal agency of the act." *Hensley*, 59 Ohio St.3d at 138; *see also Climaco*, 85 Ohio St.3d at 586. For example, when the offense is homicide, the corpus delicti involves (1) the fact of death and (2) the existence of the criminal agency of another as the cause of death. *State v. Cook*, 2010-Ohio-6305, ¶ 23.

{¶36} For purposes of R.C. 2901.13(G), "the corpus delicti of crimes involving child abuse or neglect is discovered when a responsible adult, as listed in R.C. 2151.421, has knowledge of both the act and the criminal nature of the act." *Hensley*, 59 Ohio St.3d at syllabus.[7] According to the Supreme Court of Ohio, this rule strikes "a balance between the need for a time limit and the need to ensure that those who abuse children do not escape criminal responsibility." *Climaco*, 85 Ohio St.3d at 588. The offenses charged in Counts 7 through 26 for violation R.C. 2919.22(B)(5) qualify as "crimes involving child abuse or neglect" for purposes of

---

[7] At the time of *Hensley*, the provision for tolling "any time when the corpus delicti remains undiscovered" was contained in division (F), not (G), of R.C. 2901.13. *Hensley*, 59 Ohio St.3d at 137.

this rule. *See* R.C. 2151.031(C) (defining an "abused child" as including any child who "[i]s endangered as defined in" R.C. 2919.22); 1973 Legislative Service Commission comment to R.C. 2919.22 ("[t]his section is aimed at child neglect and abuse which causes, or poses a serious risk to the mental or physical health or safety of the victim").

{¶37} In *Hensley*, the Supreme Court of Ohio rejected the argument that the limitation period begins to run under this provision "only when the prosecutor or other law enforcement agencies discover the corpus delicti of the crime." *Hensley*, 59 Ohio St.3d at 139 (explaining that "[s]uch a rule of law could subject a person to criminal liability indefinitely with virtually no time limit, and thus frustrate the legislative intent of a statute of limitations on criminal prosecutions"). Instead, the Court found "that R.C. 2151.421 provides an appropriate list of responsible adults who, upon obtaining knowledge of possible child abuse, are charged by operation of law with reporting said abuse to the proper authorities." *Id.* at 139-141 (finding that the child victims' therapists/counselors knew of the abuse for approximately three years before law enforcement authorities were contacted). At all relevant times, R.C. 2151.421 has included the following among the responsible adults: school teacher; school employee; or administrator or employee of a certified child care agency or other public or private children services agency. R.C. 2151.421(A)(1)(b). It has *not* included a grandparent or parent. *Id.*; *see also Hensley*, 59 Ohio St.3d at 141.

**{¶38}** Additionally, we and other appellate districts have held that the corpus delicti of crimes involving child abuse or neglect generally is deemed to be discovered once the child reaches the age of majority. *E.g., State v. Hammons*, 1995 WL 737526, *2-3 (3d Dist. Dec. 14, 1995); *State v. McGraw*, 1994 WL 264401, *3-4 (8th Dist. June 16, 1994) (following *Hensley*, the tolling of the statute of limitations under the "corpus delicti" provision ceases upon the child-victim reaching the age of majority). We explained:

> The *Hensley* court refused to read R.C. 2901.13(F) [now (G)] so expansively as to 'subject a person to criminal liability indefinitely with virtually no time limit, and thus frustrate the legislative intent of a statute of limitations on criminal prosecutions.' [*Hensley*] at 139. The objective herein, as it was in *Hensley,* is to find a middle ground between the rights of the victims and the need to determine a definite time period within which an accused can be subject to prosecution. *Id.* at 139. . . .
>
> Applying the principles enunciated in *Hensley* to the matter herein, we find that when an adult claims that he was sexually abused as a child, the corpus delicti is discovered when the person reaches the age of majority, absent a showing that the victim did not understand the criminal nature of the act. . . . Such a determination strikes the proper balance between the rights of the victim and the right of an accused not to be subject to criminal liability indefinitely.

*Hammons* at *3.

**{¶39}** Considering these principles, we first address Counts 7 through 16 involving L.G. She turned 18 years old on October 4, 2014. Therefore, on that date, R.C. 2901.13(G) no longer tolled the limitations period for Counts 7 through 16. *Id.* at *2-3. Because October 4, 2014 is more than six years before the prosecution commenced, R.C. 2901.13(G) did not prevent the limitation period from expiring

-20-

for those counts. Stated differently, the prosecution would have had to commence by October 4, 2020, absent some additional tolling provision.

{¶40} Next, we address Counts 17 through 26, involving K.A. Immediately after K.A. identified all ten nude photos corresponding with those ten counts, she was asked if she "told anybody about these specific pictures." (Trial Tr. at 164-169). K.A. testified she had and, when asked who she told, she responded that she "told teachers at school when I was in sixth grade." (*Id.*). Pursuant to *Hensley*, the corpus delicti of the crimes in Counts 17 through 26 was discovered, for purposes of R.C. 2901.13(G), when K.A. told her teachers about the nude photos. *See Hensley*, 59 Ohio St.3d 136, at syllabus; *State v. Ritchie*, 95 Ohio App.3d 569, 570-571 (12th Dist. 1994) (the charged offenses were "first discovered" when a babysitter reported to the children services agency—more than seven years earlier—that the victim had told her that defendant "made me put my ding-dong in his mouth," despite the agency's subsequent investigation finding the allegations to be unsubstantiated). Thus, tolling under R.C. 2901.13(G) stopped at that point. This too is more than six years before the prosecution commenced, so R.C. 2901.13(G) did not prevent the limitation period from expiring for those counts.

{¶41} In support of its argument that R.C. 2901.13(G) applied to toll the statute of limitations, the State argues the photographs were not discovered during the initial CPS investigation and the matter was prosecuted within six years of the actual discovery of the photographs in December 2021. (Appellee's Brief at 8).

This was also the basis of the trial court's decision to deny Goller's Crim.R. 29 motion. However, finding the photographs was unnecessary to discover the corpus delicti for Counts 7 through 26. *Hensley*, 59 Ohio St.3d at 139-141; *Hammons*, 1995 WL 737526, at *2-3 (3d Dist.). In other words, a person can have knowledge of both the act and criminal nature of the act without actually finding the photographs. In fact, a person can be prosecuted and convicted for endangering children in violation of R.C. 2919.22(B)(5) without the presence of any photographs or videos. *E.g., State v. Stewart*, 111 Ohio App.3d 525, 535-536 (9th Dist. 1996) (affirming conviction "[b]ased on the victim's descriptions of the photographs she said defendant and [third party] forced her to take"); *State v. McClain*, 2020-Ohio-952, ¶ 4, 8, 25 (2d Dist.) (affirming conviction where defendant enticed and allowed a minor to participate in a masturbation performance for defendant's benefit). Ultimately, the State has not established that R.C. 2901.13(G), involving corpus delicti, continued its tolling until actual discovery of the photos.

### c.     *R.C. 2901.13(J) – Abuse or Neglect of Child*

**{¶42}** This does not conclude our analysis because, as shown above, R.C. 2901.13(J)—when applicable—likewise prevents the limitation period from starting to run until a particular occurrence. Goller argues that, by 2011, R.C. 2901.13(J) was no longer an impediment to the period of limitation running. He bases this argument on the CPS investigation "that occurred when K.A. was in fifth grade"

and on the teachers' knowledge. (Appellant's Brief at 8-9). Again, that division states:

> (J) The period of limitation for a violation of any provision of Title XXIX of the Revised Code that involves a physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of a child under eighteen years of age . . . shall not begin to run until either of the following occurs:
>
>> (1) The victim of the offense reaches the age of majority.
>>
>> (2) A public children services agency, or a municipal or county peace officer that is not the parent or guardian of the child, in the county in which the child resides or in which the abuse or neglect is occurring or has occurred has been notified that abuse or neglect is known, suspected, or believed to have occurred.

R.C. 2901.13(J) is relevant because Counts 7 through 26 each alleged a violation of a provision of Title XXIX of the Revised Code that involves a mental injury or condition of a nature reasonably indicating abuse of a child under 18 years old, namely R.C. 2919.22(B)(5). R.C. 2901.13(J); *see also* 1973 Legislative Service Commission comment to R.C. 2919.22 ("[t]his section is aimed at child neglect and abuse which causes, or poses a serious risk to the mental or physical health or safety of the victim").[8]

**{¶43}** First addressing Counts 7 through 16 where L.G. was the victim, the result is the same as with R.C. 2901.13(G). At the latest, R.C. 2901.13(J) was no longer an impediment to the commencement of the period of limitation when L.G.

---

[8] The text in what is now division (J) of R.C. 2901.13 came into effect on August 3, 2006. Among the purposes for the legislative act that added the text was "to toll the criminal statute of limitations for violations involving abuse or neglect of a child if certain individuals fail to report the abuse or neglect of the child." Am.Sub.S.B. No. 17, 2006 Ohio Laws File 97.

reached the age of majority on October 4, 2014. *See* R.C. 2901.13(J)(1) (the limitation period shall not begin to run until *either* of the two subsections in R.C. 2901.13(J) occurs). Six years from that date would be October 4, 2020—prior to the prosecution commencing. Therefore, R.C. 2901.13(J) did not prevent the limitation period from elapsing for Counts 7 through 16.

{¶44} Turning to the counts alleging K.A. was the victim (17 through 26), she did not turn 18 years old until October 29, 2016, which—unlike the counts involving L.G.—is less than six years from when the prosecution commenced. Stated differently, prosecution would have had to commence by October 29, 2022, which it did. Having determined the State cleared that obstacle, we move our analysis from (J)(1) to (J)(2). The evidence at trial established (J)(2) was triggered in 2009 or 2010 for Counts 17 through 20 (the September 6, 2008 photos), but not for Counts 21 through 26 (the February 2011 photos). Specifically, the evidence showed that CPS conducted an investigation into suspected abuse of L.G. and K.A in 2009 or 2010. Therefore, at that time, CPS was notified that abuse or neglect was known, suspected, or believed to have occurred. R.C. 2901.13(J)(2). Goller had taken the pictures relating to Counts 17 through 20 on September 6, 2008; thus, those offenses had occurred by the time of the CPS investigation. However, the evidence did not indicate any CPS investigation after 2010 or that CPS (or other public children services agency or a peace officer) had been notified that abuse or neglect was known, suspected, or believed to have occurred after 2010—until after

-24-

Colleen contacted Deputy Mueller in December 2021. (Trial Tr. at 150 (L.G. testifying CPS interviewed her when she was eleven years old in sixth grade); *id.* at 168-169, 172 (K.A. testifying CPS only ever talked to her in fifth grade); *id.* at 201-202 (Deputy Mueller testifying CPS was involved in 2009 or 2010)). Therefore, based on the evidence presented, the nude pictures of K.A. that Goller took in February 2011 at his house (Counts 21 through 26) post-dated the CPS investigation and the offenses identified in Counts 21 through 26 had not yet occurred.[9]

{¶45} Accordingly, R.C. 2901.13(J) was no longer an impediment to the period of limitation starting to run on Counts 17 through 20 once the CPS investigation took place in 2009 or 2010, but—for counts 21 through 26—it was not until victim K.A. reached the age of majority on October 29, 2016 that R.C. 2901.13(J) was no longer an impediment. *See* R.C. 2901.13(J). In other words, the period of limitation only started running for counts 21 through 26 on October 29, 2016. Significantly, that date is within six years of when the prosecution commenced, so those six counts were not barred by the statute of limitations.

### d. Count 27

{¶46} Finally, Count 27 neither charged endangering children nor involved L.G. or K.A. Instead, it involved a picture that included female minors in a state of nudity and alleged that Goller had created, directed, produced, or transferred

---

[9] Additionally, there was no indication that any teacher K.A. told about the photos in the sixth grade was "a municipal or county peace officer" or "public children services agency." R.C. 2901.13(J), (K).

material or a performance that showed a minor in a state of nudity. The image was found on one of the laptops Goller had given to Tyler.

**{¶47}** On appeal, Goller does not specifically address this offense, instead focusing his argument on the endangering children offenses.[10] Regardless, even if his argument on appeal included his conviction for violating R.C. 2907.323(A)(1), the statute of limitations did not bar Goller's prosecution for that offense. The offense occurred on or about December 18, 2021, when Goller provided the laptop to his son, i.e., transferred material that shows a minor—who is not Goller's child or ward—in a state of nudity. Moreover, Deputy Mueller testified the image had a creation date of July 4, 2016, which was less than six years before the prosecution was commenced in January 2022. Thus, the prosecution for that offense took place within the six-year period of limitation in R.C. 2901.13.

**{¶48}** In summary, we find that the elements of the endangering children offenses in Counts 7 through 16 and Counts 17 through 20 occurred before January 2016 and no specialized rule or tolling exception applied to prevent the six-year period of limitation from running out before the prosecution commenced in January 2022. Therefore, Goller's convictions for those offenses must be vacated. *E.g.*, *State v. Beck*, 2016-Ohio-8122, ¶ 20-21, 46 (1st Dist.) (sustaining assignment of error, in part, and instructing the trial court to vacate the convictions for three counts

---

[10] In fact, Goller mistakenly says that "Counts 7 *through 27* are violations of R.C. 2919.22(B)(5)." (Emphasis added.) (Appellant's Brief at 5).

because defendant could not be convicted for acts only prosecuted after the limitation period had expired). However, we find R.C. 2901.13(J) tolled the period of limitation for Counts 21 through 26 until K.A. reached the age of majority on October 29, 2016. Therefore, those counts were commenced within the six-year limitation period. Additionally, we find Count 27 for illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(1), was commenced within the limitation period. Therefore, Goller's first assignment of error is sustained with respect to Counts 7 through 20, but overruled with respect to Counts 21 through 27.

### B. Second Assignment of Error

{¶49} In the second assignment of error, Goller asserts that the six rape convictions were against the manifest weight of the evidence.

### 1. Standard of Review

{¶50} The "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *State v. Messenger*, 2022-Ohio-4562, ¶ 26. "[W]e review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 2018-Ohio-1562, ¶ 168. Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn

the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119. To reverse a judgment from a jury trial on the weight of the evidence, all three appellate judges must concur. Ohio Const., art. IV, § 3(B)(3).

### 2. Applicable Law

**{¶51}** At the time of the alleged rapes, the rape statute provided: "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender . . . when . . . [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b) (effective Jan. 1, 2008 to Mar. 21, 2019); *see also State v. Martin*, 2015-Ohio-1339, ¶ 11 (3d Dist.) (generally, "we apply statutes as they existed at the time of the offense"). As used in that section, the term "[s]exual conduct" meant "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A) (effective Jan. 1, 2008 to Mar. 21, 2019).

### 3. Analysis

**{¶52}** Based on the evidence presented at trial, we do not find that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse any of the rape convictions and order a new trial.

**{¶53}** Counts 1 and 2 involved allegations that Goller licked a substance off K.A.'s and L.G.'s vaginal areas, respectively. Count 6 concerned the allegation that Goller placed an edible substance on K.A.'s vaginal area and then licked it off. "Penetration of a victim's bodily orifice is not . . . required for 'cunnilingus,' which involves licking or oral stimulation of the vulva." *State v. Brewer*, 2004-Ohio-3572, ¶ 33 (2d Dist.). Regarding Counts 1 and 2, the weight of the evidence supported that Goller had licked syrup off each girl's vaginal area in his kitchen. *See id.* at ¶ 34 (rejecting manifest weight of the evidence argument concerning rape conviction where mentally disabled victim testified defendant "put his face down in my vaginal area and licked the inner part of my thigh and vaginal and anal area"). Regarding Count 6, the weight of the evidence supported that, while in the hotel in Defiance, Goller had licked spray cheese off of K.A.'s vaginal area. *Id.*

**{¶54}** Counts 3 and 4 involved allegations that Goller inserted a sex toy into the vagina of K.A. and of L.G., respectively. The weight of the evidence supported that Goller had inserted a vibrator into each girl's vagina when they were in the backyard playhouse. Count 5 concerned the allegation that Goller put a finger into L.G.'s vagina while he shaved, or showed L.G. how to shave, her pubic region. Again, the weight of the evidence supported that Goller committed rape while shaving, or showing L.G. how to shave, her vagina. *State v. Melendez*, 2009-Ohio-4425, ¶ 14 (9th Dist.) ("insertion, however slight, of a part of the body or other object within the vulva or labia is sufficient to prove vaginal penetration for

purposes of proving sexual conduct as defined in R.C. 2907.01(A) and rape in violation of R.C. 2907.02").

**{¶55}** Goller argues that the State did not present any physical evidence of sexual conduct and, instead, "relies entirely on the testimony of L.G. and K.A. to substantiate the sexual conduct." (Appellant's Brief at 10-11). Yet, pictures of where the rapes occurred (the kitchen and playhouse) were identified by L.G., K.A., and Deputy Mueller and admitted into evidence at trial. Regardless, the presentation of physical evidence at trial is not required to convict someone of rape. *E.g.*, *State v. Williams*, 2017-Ohio-8898, ¶ 1, 8, 19 (1st Dist.) ("[t]he lack of physical evidence or the fact that [defendant] presented testimony to dispute that the attacks could have happened in the way the girls described are insufficient to justify reversal of the convictions" for raping two minors); *State v. Kaufman*, 2010-Ohio-1536, ¶ 5, 71 (7th Dist.) ("there is no requirement that testimonial evidence of sexual abuse must be corroborated by physical or other evidence," and "[t]he lack of physical evidence in this case is understandable, given that this case was prosecuted years after the abusive acts were alleged to have occurred").

**{¶56}** Goller also argues that L.G. and K.A.'s "testimony is not sufficiently credible" to establish proof of the rape offenses beyond a reasonable doubt because "both insisted that no sexual conduct occurred when questioned by law enforcement and protective services." (Appellant's Brief at 10-11). However, whether they had told law enforcement and CPS that no sexual conduct occurred is not dispositive.

*E.g., State v. Carmen*, 2008-Ohio-5842, ¶ 3, 45-49 (12th Dist.) (overruling manifest weight of the evidence challenge to rape conviction where defendant attacked victim's credibility because child victim had told children's services no sexual activity had occurred but testified at trial about sexual activity with defendant); *State v. Bowen*, 2020-Ohio-24, ¶ 33 (5th Dist.) (rape conviction not against manifest weight of the evidence; "[t]he jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility"). "It is not incredible for the [finder of fact] to have accepted the version the victim gave under oath." *State v. Talley*, 2008-Ohio-227, ¶ 24 (8th Dist.) (overruling manifest weight of the evidence challenge to rape conviction where victim changed his story between the time he made a statement to the police and testified at trial). Additionally, Deputy Mueller testified that, during his twenty years of experience in dealing with dozens of child sexual abuse matters, it is not unusual for the victims to delay disclosure or give flat-out denials—even when there is overwhelming information upon which to believe child sexual abuse had occurred. The Supreme Court of Ohio has also explained:

> It is common knowledge in child sex abuse cases that the victims often internalize the abuse, and in some instances blame themselves, or feel somehow that they have done something wrong. Moreover, the mental and emotional anguish that the victims suffer frequently inhibits their ability to speak freely of the episodes of abuse.

*Hensley*, 59 Ohio St.3d at 138-139.

{¶57} Goller's second assignment of error is overruled.

## IV.    CONCLUSION

**{¶58}** Having found error prejudicial to Appellant in one of the particulars assigned and argued, we reverse, in part, the November 9, 2023 judgment of the Defiance County Court of Common Pleas. In light of our resolution of the first assignment of error, we remand this matter to the trial court with instructions to vacate Goller's endangering children convictions for Counts 7 through 20. We affirm the trial court's judgment in all other respects.

*Judgment Affirmed in part,*
*Reversed in part, and*
*Cause Remanded*

**WILLAMOWSKI, P.J. and WALDICK, J., concur.**

**/jlm**